[Civ. No. 46741. Second Dist., Div. Two. Dec. 17, 1975.]

COUNTY OF SANTA BARBARA, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD,
or ROBERT CORNEJO et al., Respondents.

COUNSEL

George P. Kading, County Counsel, and Marvin Levine, Deputy County Counsel, for Petitioner.

Robert A. LaPorta and Allan S. Ghitterman for Respondents.

OPINION

**COMPTON, J.**—The single question on this review is whether a county may, with the express consent of the recipient, obtain a valid lien against workers' compensation for so-called "general assistance" paid by the county under part 5 (§§ 17000-17410) of division 9 of the Welfare and Institutions Code.

The Workers' Compensation Appeals Board denied a lien based upon its reading of *Ogdon* v. *Workmen's Comp. Appeals Bd.,* 11 Cal.3d 192 [113 Cal.Rptr. 206, 520 P.2d 1022]. This court denied a writ of review. The Supreme Court granted a hearing and transferred the case to us. We have issued a writ of review and heard argument. Largely in view of distinctions made in *Ogdon* and the Supreme Court's remand of the case to us, we conclude that a county may acquire such a lien and that petitioner County of Santa Barbara has done so in the present case. Accordingly, we annul the board's orders denying payment of the lien.

## FACTS

Respondent Robert Cornejo allegedly suffered an industrial injury on November 1, 1972. The case apparently presented difficulties as to entitlement to workers' compensation and obstacles to settlement. In any event, payments were not made by the compensation carrier (respondent State Compensation Insurance Fund) in the years 1973 and 1974. An application for compensation had been filed and hearings were conducted in the fall of 1974, but no award had been made by the end of 1974.

On November 4, 1974, Cornejo applied to the Santa Barbara County Welfare Department for assistance and was advanced $96.50. Between that date and March 5, 1975, he was paid $415.52 for food and $297 for rent, for a total of $712.52. At the time of the initial payment, the county eligibility worker prepared and executed a WCAB form "Notice and Request for Allowance of Lien." The form recited the initial payment and requested a lien therefor and for any "additional sums as furnished according to need." The form also recited that the requested lien was for "The reasonable value of living expenses of said employee or of his dependents, subsequent to the injury." (Cf. Lab. Code, § 4903, subd. (c).) In an addendum to the form entitled "Employee's Consent to Allowance of Lien," Cornejo endorsed his signature to the statement, "I consent to the requested allowance of a lien against my compensation."

The taking of the lien was in accordance with provisions of the county welfare manual on "general relief." The manual had been approved by resolution of the board of supervisors and, in addition to specifying certain details, provided that, "If the applicant or recipient of General Relief has a claim pending for workmen's compensation, he shall be asked to execute a lien . . . in favor of Santa Barbara County for aid paid him pending settlement of his claim."

By a board-approved compromise and release of March 18, 1975, Cornejo settled his compensation claim for $5,214.18. Various other liens were allowed, but the compensation judge disallowed the County of Santa Barbara's lien claim "based on *Ogdon* v. *WCAB.*" His reasoning was that *County of Contra Costa* v. *Industrial Acc. Com. (Wilkerson)*, 212 Cal.App.2d 585, 586 [28 Cal.Rptr. 303], had recognized such a lien for "county indigent aid," but that *Wilkerson* had been disapproved in *Ogdon* (11 Cal.3d at p. 208). .

The appeals board adopted the compensation judge's report and this petition by the County of Santa Barbara followed.

## DISCUSSION

Basically, it is the county's position that while *Ogdon* explicitly denied a lien against workers' compensation for "public assistance," it contrasted the situation with respect to "general assistance," and thereby inferentially approved such a lien as that claimed by the county in this instance. Support for the county's view can be derived from the Supreme Court's order remanding this case to us. The order reads, "See Ogdon [etc.], fn. 5." The sentence of the opinion footnoted reads, "In the absence of statute therefore no liability rests upon the recipient of *public assistance* in this state to reimburse the state or county for aid legitimately obtained and granted." (Italics in original.) Footnote five to that sentence is as follows:

"5 *Public Assistance* programs are those state programs established to implement the partially federally funded Social Security Act provisions, and the state Department of Social Welfare is charged with supervision thereof. (Welf. & Inst. Code, §§ 10051, 10054, 10061.) They are contained in part 3 of the Public Social Services Act and are to be distinguished from the *general assistance* programs contained in part 5 of that act (Welf. & Inst. Code, §§ 17000 to 18000.) The latter are entirely state financed and are designed to carry out the traditional duty of counties and cities to provide aid to indigent residents who are not otherwise supported. . . ." (Italics in original.)

The opinion in *Ogdon* is an exhaustive analysis of the statutory provisions respecting *public assistance* (Welf. & Inst. Code, §§ 11000-15520) calculated to show that those provisions do not authorize "recoupment" of such assistance and therefore inhibit, rather than enable, the taking of liens to that end. (Specifically, Welf. & Inst. Code, § 11007 states that "Aid granted to a recipient of public

assistance shall not constitute a lien upon any property of the recipient.") Throughout the opinion in *Ogdon* a contrast is drawn for this purpose between the provisions respecting *public assistance* and those respecting *general assistance*. (Welf. & Inst. Code, §§ 17000-17410.) However, because the point was not there involved, no conclusion was stated as to the taking of liens against workers' compensation to recoup general assistance. Apparently the point was intentionally left to a subsequent case, which has now arisen.

The Labor Code provisions on liens against workers' compensation (§§ 4900-4909) and the Welfare and Institutions Code provisions on general assistance (§§ 17000-17410) have stood in juxtaposition for many years. Remarkably, however, the question of the effectiveness of a county's taking of such a lien to recoup such assistance has not directly arisen in any reported decision. In *Wilkerson, supra,* the court was concerned with the Industrial Accident Commission's reduction of a conceded lien for "county indigent aid," another denomination for "general assistance." (See the subsequent discussion of *Wilkerson* in *Kaiser Foundation Hospitals* v. *Workmen's Comp. Appeals Bd.,* 13 Cal.3d 20, 25 [117 Cal.Rptr. 678, 528 P.2d 766].) The court observed (212 Cal.App.2d at p. 586) that "the commission has long recognized . . . and here concedes, that payments by a county of indigent aid are properly the subject of such a lien." That statement was disapproved in *Ogdon* (11 Cal.3d at p. 208), but only to the extent that the whole opinion in *Wilkerson* might be read to recognize a county lien for *public assistance*. Apparently, therefore, *Wilkerson,* read in tandem with *Ogdon,* can be considered support for the permissibility of a county's taking a lien for *general assistance.*

*As pointed out in Ogdon* (11 Cal.3d at pp. 196-198), the lien provisions of the Labor Code are neutral on the question at hand. Section 4900 provides that "No claim for compensation . . . is assignable before payment" and section 4901 provides that "No claim for compensation nor compensation awarded, adjudged, or paid, is subject to be taken for the debts of the party entitled to such compensation except as hereinafter provided." Section 4903 then specifies seven types of obligations that may underlie liens against awards. The county's claim in this instance could fit only under the category of "living expenses." As to such expenses, section 4903 provides: "The appeals board may determine, and allow as liens against any sum to be paid as compensation, any amount determined as hereinafter set forth in subdivisions (a) through (g) of this section. . . .

"(c) The reasonable value of the living expenses of an injured employee or of his dependents, subsequent to the injury."

■ Although the language of section 4903 is permissive, it is settled that the Board may not disallow or reduce a lien claim that fits one of the categories of the section. (*Bryant* v. *Industrial Acc. Com.,* 37 Cal.2d 215, 220 [231 P.2d 32]. See also *Kaiser Foundation Hospitals* v. *Workmen's Comp. Appeals Bd., supra,* 13 Cal.3d 20, 25.)

As said in *Ogdon* (11 Cal.3d at pp. 197, 207): "In order to assert a lien against a compensation award there must be a valid debt and the debt must be within one of the classes enumerated in the statute . . . . The creditor must possess a right of repayment. Liens may not be asserted for moneys paid pursuant to a contract . . . ; voluntarily . . . ; or as a gift . . . . [¶] Government entities are entitled to the same standing as private citizens in asserting section 4903 liens . . . , but their liens must be statutorily conferred . . . . [¶] . . . in the absence of specific statutory authority we may not burden compensation awards with liens for benefits to which the injured employee was otherwise lawfully entitled."

The question thus becomes whether those provisions of the Welfare and Institutions Code governing general assistance (§§ 17000-17410) contain the requisite "specific statutory authority." ■ They do not do so explicitly, but a fair reading of them compels the conclusion that they authorize a county, by prior provision of its board of supervisors, to take and assert a lien as the County of Santa Barbara has done in this case.

Welfare and Institutions Code section 17000 requires each county to extend aid and relief to indigents, but the "standards of aid and care" are left to the board of supervisors (§ 17001). (See *Mooney* v. *Pickett,* 4 Cal.3d 669 [94 Cal.Rptr. 279, 483 P.2d 1231].) With respect to the ownership and retention of property by a recipient, section 17107 provides: "The board of supervisors may establish its own policies with reference to the amount of property, if any, a person shall be permitted to have while receiving assistance, to the end that, so far as it is possible, an applicant for public relief shall be required to apply his own property to his support."

Although nowhere in the general assistance provisions is there expressed an explicit duty to repay aid, section 17109 is a broadly worded provision for the county's taking of "security": "As a condition to the

grant or continuation of aid to an indigent, the board of supervisors may require, as security for the moneys so expended, that the applicant transfer or grant to it such property or interest in property as the applicant has, or such portion thereof or estate therein or lien thereon as the board specifies. . . .. Any such estate, interest, or lien shall be held by the board, subject to the claim of the county for reimbursement for aid granted to the applicant or for moneys expended in its management, preservation, or protection, and such reimbursement shall constitute a preferred claim against such estate, interest, or lien. . . ."

■ Section 17403 "explicitly and exclusively pertains to after-acquired property." *County of Los Angeles* v. *Read,* 193 Cal.App.2d 748, 752 [14 Cal.Rptr. 628]. It provides in part: "If a person for the support of whom public moneys have been expended acquires property, the county shall have a claim against him to the amount of a reasonable charge for moneys so expended, and such claim shall be enforced by action against him by the district attorney of the county on request of the board of supervisors. . . ."

It has been judicially recognized that sections 17107, 17109, and 17403 create at least a qualified obligation to repay general assistance that may be enforced in the limited ways specified in those sections. See *Del Carlo* v. *County of Sonoma,* 245 Cal.App.2d 36 [53 Cal.Rptr. 771]; *County of Kings* v. *Scott,* 190 Cal.App.2d 218 [11 Cal.Rptr. 893]; *County of L.A.* v. *Security First Nat. Bank,* 84 Cal.App.2d 575 [191 P.2d 78]. As explained in the last cited decision (at p. 578), referring to former section 2603 that anteceded section 17403: ". . . It was the rule at common law that in the absence of fraud in procuring relief a recipient of charity from the state was under no obligation to repay the governmental agency disbursing such charity; nor was the estate of such pauper under obligation to make reimbursement, notwithstanding that the indigent at the time the charities were furnished owned property. . . .

"Prior to the effective date of section 2603 the common law rule prevailed so generally that in the absence of a special statute no liability rested upon a recipient of public charity to reimburse the state and county for aid legitimately obtained. . . . Such rule was changed by the last-quoted statute, the validity of which has not heretofore been questioned before the appellate courts. . . ."

It thus appears that there is a determinative difference between the indigent aid advanced in this case and the "public assistance" dealt with

by the Supreme Court in *Ogdon*. ■ Taken together, Welfare and Institutions Code sections 17001, 17107, 17109, and 17403 leave the question of recoupment of general assistance and related matters, including the taking of liens for that purpose, to the counties and their boards of supervisors. Having established a policy of taking liens on compensation claims and that policy having been appropriately implemented in this case, the County of Santa Barbara acquired a lien for "living expenses" that must be recognized under subdivision (c) of Labor Code section 4903.

As made clear in *Ogdon* (11 Cal.3d 192, fn. 18), the question of public aid recoupment from workers' compensation benefits is purely one of legislative policy. The questions now include the query whether there should be any difference in this respect between general assistance and public assistance. That too, however, is exclusively for the Legislature.

The portion of the order of May 21, 1975, denying the County of Santa Barbara's lien claim and the order denying reconsideration of June 23, 1975, are annulled and the matter is remanded to the board for further proceedings consistent with this opinion.

Fleming, Acting P. J., and Beach, J., concurred.