[Civ. No. 39612. First Dist., Div. One. Aug. 31, 1977.]

JOHN LUCIDO, Plaintiff and Appellant, v.
ROBERT RIPPETO, as Director, etc., et al.,
Defendants and Respondents.

COUNSEL

Carl L. McConnell, Brian W. Newcomb and Peter H. Reid for Plaintiff and Appellant.

Keith C. Sorenson, District Attorney, and Gregory J. Antone, Deputy District Attorney, for Defendants and Respondents.

## OPINION

**SIMS, Acting P. J.**—Petitioner, a recipient of county general assistance (see Welf. & Inst. Code, § 17000 et seq.[1]), has appealed from a judgment which denied his petition for a peremptory writ of mandate ordering the payment of his claim for general assistance benefits without deductions for recoupment of overpayments due solely to county error, and denied his prayer for a declaration that the regulation referred to as GA Manual section 4-07, which purported to authorize that deduction was invalid. He contends that in the absence of any statute authorizing such recoupment, the common law rule against recoupment of welfare benefits applies; that the rule upon which the county relies is invalid because it contravenes the provisions of section 17000 (see fn. 1 above); and that the county is estopped to seek recoupment because the overpayment was caused by its own error.

On review we find that the trial court properly concluded that the rule applied was properly adopted pursuant to the provisions of sections 17000 and 17001[2] of the Welfare and Institutions Code, and was otherwise valid, that the common law rule against recoupment of benefits was inapplicable, and that the doctrine of equitable estoppel was not applicable. The judgment must be affirmed.

The facts are not disputed. On April 4, 1974, Lucido applied for general assistance (hereinafter GA) from the San Mateo County Welfare Department. During his interview with the intake worker he said that his life was insured, but that he did not know the cash surrender value of the insurance policy. (Apparently his mother paid the premiums and was the beneficiary.) The worker said that it was probably not enough to make Lucido ineligible for GA (i.e. more than $300), told him to put "zero" after the question about insurance on the application form, said that she would investigate the matter further herself, and made a note to herself to that effect on the form. No further investigation of the matter was in fact made by the department, and Lucido did not amend the application.

---

[1]Section 17000 reads: "Every county and every city and county shall relieve and support all incompetent, poor, indigent persons, and those incapacitated by age, disease, or accident, lawfully resident therein, when such persons are not supported and relieved by their relatives or friends, by their own means, or by state hospitals or other state or private institutions."

[2]Section 17001 provides: "The board of supervisors of each county, or the agency authorized by county charter, shall adopt standards of aid and care for the indigent and dependent poor of the county or city and county."

He received GA in April, May and June of 1974. He terminated the aid on June 30, when he moved to Santa Clara County, where he also applied for GA in July. By this time he had learned that the cash surrender value of the insurance policy was $565, and as Santa Clara had the same $300 limit as San Mateo, he was denied benefits. In August he received a check from the insurance company for $565.08, in liquidation of the policy.

On October 29, 1974, having returned to San Mateo County, Lucido reapplied for GA there. He was found eligible for the maximum aid of $121 per month, but the department, now aware of the value of the insurance policy, sought to recoup the earlier overpayments, which the department determined to be $319, the total amount of GA Lucido had received in the spring. Sections 4-06, 4-07 and 4-08 of the San Mateo County G.A. Manual provided in relevant part as follows:

"4-06 OVERPAYMENT ADJUSTMENTS [¶] Overpayment adjustment is the liquidation of an overpayment by decrease of the aid payment to an otherwise eligible recipient or by a current cash adjustment in the amount which could have been adjusted by the decrease. . . .

"4-07 ADJUSTMENT PERIOD FOR CLIENT WHO MEETS REPORTING RESPONSIBILITY [¶] 1. *Income and/or Need* [¶] For the recipient who met his reporting responsibility, and overpayment is due to administrative error, or reported changes in income and/or need occurred too late in the month to be reflected in the grant for the current month, the maximum adjustment period is six (6) months following the month of payment or month of discovery whichever is later. Amount of overpayment is determined for twelve (12) months prior to date of discovery. [¶] If the recipient does not have sufficient income or resources to meet his basic needs during the adjustment period, the grant shall not be decreased below the actual cost of housing or the basic housing allowance, whichever is less, plus the Food Stamp purchase price. [¶] 2. *Excess Personal Property*: [¶] If ineligibility due to excess personal property occurred when the recipient met his reporting responsibilities and it cannot be established that the recipient received aid in bad faith, the amount of overpayment shall be the full amount of aid received during the period of ineligibility or the highest market value of the excess personal property on any day during the total period of ineligibility, whichever is lesser. [¶] 4-08 ADMINISTRATIVE ERROR [¶] An administrative error is defined as . . . 4. Failure to grant or pay in the correct amount when all information essential for such payment was in the record."

The department reduced Lucido's grant from $121 to $70 per month, the actual cost of his housing. A determination was made that there had been no fraud in the earlier application.

On February 6, 1975, Lucido requested a fair hearing to contest the reduction of his grant, and after the hearing on February 24, the hearing officer issued a decision on March 10. The hearing officer found that Lucido had met his reporting requirements and that the overpayment was due to agency error, but that Lucido was not in fact eligible for GA the previous April, May and June. He received a total of $319, and his excess personal property during that time was $265 (the value of the insurance policy exceeding $300). The lesser figure, $265, was found to be the amount of overpayment, which subjected his grant to adjustment for a period of six months under section 4.07.1. The hearing officer further held that Lucido's grant could not be reduced below his housing cost *plus* the purchase price of food stamps. Thus, his monthly grant was increased to $85 to cover food and housing, and the county was allowed to retain $36 a month for six months to recoup part of the earlier overpayment.

Almost a year after this decision Lucido filed his petition and complaint for recovery of the reduction in his aid, and for a declaration that the adjustment provision in section 4-07 was invalid against the directors responsible for the administration of the GA program. His grounds were first, that under the common law a recipient of welfare has no obligation to repay benefits in the absence of fraud or an authorizing statute; second, that the San Mateo regulation violates the purpose of section 17000 of the Welfare and Institutions Code, which requires counties to support their indigent residents; and third, that the department was equitably estopped from recovering overpayments caused by its own mistakes. After hearing oral argument on March 3, 1976, the trial court issued findings of fact, essentially as stated above, and conclusions of law. These conclusions were basically that the regulations were valid and that the department was not estopped from applying them to Lucido. Judgment was rendered accordingly, and Lucido now appeals.

I

The trial court concluded in part as follows: "(5) The common law rule against recoupment of benefits innocently obtained is inapplicable because Welfare and Institutions Code Section 17001 authorizes the adoption of standards and regulations by the County, such as the

recoupment regulation in question herein. [¶] (6) The common law rule is further inapplicable in that case law distinguishes between 'public assistance' programs, in which the rule is applicable, and 'general assistance' programs, in which it is not."

The applicant first attacks the latter conclusion. In *County of Alameda* v. *Janssen* (1940) 16 Cal.2d 276 [106 P.2d 11, 130 A.L.R. 1141], it was contended that an amendment to the law in 1939, which permitted the release of liens and cancellation of agreements taken by a county in connection with old age assistance payments, was unconstitutional because it authorized a gift of public property in violation of provisions of the state Constitution. In determining that such action could itself be a grant of aid, the court pointed out: "In the absence of a special statute no liability rests upon an aged person to reimburse the state and county for aid legitimately obtained and granted [citations], [3] and there is no provision in section 22 of article IV requiring such liability. The Legislature thus has the power to grant aid to indigent aged without

[3] The director claims that the cited cases involve no mistake, fraud or other error, and analyzes them as follows: "*Bremer County* v. *Curtis* (1880) 54 Iowa 72 [6 N.W. 135] (estate claim by county for supplies provided deceased indigent—court found no implied promise to repay since 'deceased was a pauper at the time the supplies were furnished, and it must be presumed said deceased was legally *entitled thereto*.' [italics added]; *Montgomery County* v. *Gupton* (1897) 139 Mo. 303 [39 S.W. 447, 40 S.W. 1094] (same)—aid properly paid to insane indigent despite her having a small amount of property—no recovery against deceased's estate; *Peabody* v. *Town of Holland* (1935) 107 Vt. 237 [178 Atl. 888] (doctor sued for services rendered indigent who had 'bonus' and insurance policy with federal government—held, since recipient *properly* found eligible for the aid, no liability to repay without statute); *In re Dufek's Estate* (1925) 164 Minn. 55 [204 N.W. 469] (recipient of welfare owned a small cottage—'This was known to the County. There was no mistake nor misrepresentation nor deception;' therefore no right to recover without statute); *Spokane County* v. *Arvin* (1932) 169 Wash. 349 [13 Pac.2d 1089] (incompetent in county poor farm who had railroad insurance policy for disability—*no cash surrender value* at time aid received; therefore aid properly provided without mistake—no right to go after proceeds of policy when cashed in). [*Peabody* v. *Town of Holland* has been misread and is completely irrelevant. It holds that a doctor rendering emergency treatment to an indigent cannot recover without prior authorization in the absence of a statute so providing.]"

Other authorities to which the parties have referred similarly refer to the general question of the obligation to repay welfare benefits legitimately paid and received, and do not deal with the question of recoupment of payments made because of fraud or mistake. (See: *Chester* v. *Underhill* (1844) 16 N.H. 64, 67; *Pontypridd Union* v. *Drew* (1927) 1 K.B. 214; and Graham, *Public Assistance* (1968) 43 N.Y.U.L. Rev. 451, 475-494.)

In City of *Albany* v. *McNamara* (1889) 117 N.Y. 168 [22 N.E. 931] the court found no mistake, and also that the aid had been furnished without a request. Insofar as *Inhabitants of Stow* v. *Sawyer* (1862) 85 Mass. 515, indicates a contrary conclusion, it is qualified by recognizing a moral obligation to repay, where it is subsequently determined that the recipient in fact had assets for her support.

imposing any lien upon their property and whenever it does so it supplements direct aid with the benefits which attend freedom from such an encumbrance. If instead it imposes a lien upon the property of recipients of aid which it subsequently releases it merely defers the benefits supplementary to direct aid which it might have conferred at the outset. In either case the benefits serve the same public purpose of aiding the indigent aged." (16 Cal.2d at p. 283. Accord: *County of L.A.* v. *Security First Nat. Bank* (1948) 84 Cal.App.2d 575, 578 [191 P.2d 78].)

The latter case, citing four of the six cases referred to in the *Janssen* case, states the rule more broadly as follows: "It was the rule at common law that in the absence of fraud in procuring relief a recipient of charity from the state was under no obligation to repay the governmental agency disbursing such charity; nor was the estate of such pauper under obligation to make reimbursement, notwithstanding that the indigent at the time the charities were furnished owned property. [Citations.]" (84 Cal.App.2d at p. 578.) In that case the court found there was an applicable statute (former § 2603, see present § 17403) which changed the common law rule, and it ruled that it was unnecessary to file a claim against the estate of the recipient because it was a law-imposed obligation. (*Id.,* at pp. 578-579.)

The most recent exposition of the rule relied upon by the applicant is found in *Ogdon* v. *Workmen's Comp. Appeals Bd.* (1974) 11 Cal.3d 192 [113 Cal.Rptr. 206, 520 P.2d 1022], where it was phrased as follows: "At common law in the absence of fraud in procuring relief a recipient of charity was under no obligation to repay the government agency disbursing such charity. [Citations.] [¶] In the absence of statute therefore no liability rests upon the recipient of *public assistance* in this state to reimburse the state or county for aid legitimately obtained and granted.[5] (See *County of Alameda* v. *Janssen* (1940) 16 Cal.2d 276, 283-284 . . . 130 A.L.R. 1141 [Old Age Security]; 23 Ops.Cal.Atty.Gen. 29 (1954) [Aid to Needy Children].)" (11 Cal.3d at pp. 199-200. See also *Oliva* v. *Swoap* (1976) 59 Cal.App.3d 130, 136 [130 Cal.Rptr. 411]; and *Webb* v. *Swoap* (1974) 40 Cal.App.3d 191, 195 [114 Cal.Rptr. 897].) It is footnote 5 which gives rise to the trial court's conclusion of law which is under review. It states. "5. *Public Assistance* programs are those state programs established to implement the partially federally funded Social Security Act provisions, and the state Department of Social Welfare is charged with supervision thereof. (Welf. & Inst. Code, §§ 10051, 10054, 10061.) They are contained in part 3 of the Public Social Services Act and are to be distinguished from the *general assistance* programs contained in part 5

of that act (Welf. & Inst. Code, §§ 17000 to 18000). The latter are entirely state (*sic* "locally" [?]) financed and are designed to carry out the traditional duty of counties and cities to provide aid to indigent residents who are not otherwise supported. (*County of L.A.* v. *Dept. of Social Welfare* (1953) 41 Cal.2d 455. . . .)" (*Id.,* p. 200.)

In *Ogdon* the court held that despite the fact that section 4903, subdivision (c), of the Labor Code authorized a lien for amounts advanced for "[t]he reasonable value of the living expenses of an injured employee or. of his dependents, subsequent to the injury," advances made under the aid to families with dependent children program could not be so recouped, because there was no provision for recoupment of AFDC benefits which properly had been paid. The distinction between benefits payable under a "public assistance" program and a "general assistance" program was necessary because a prior case had assumed that such a lien was proper in the former case when it determined that the lien could not be reduced. (See *County of Contra Costa* v. *Industrial Acc. Com. (Wilkerson)* (1963) 212 Cal.App.2d 585 [28 Cal.Rptr. 303].) In reviewing that case the *Ogdon* court observed and ruled, "The only specific reference to the propriety of the lien claim pursuant to subdivision (c) of section 4903 was that 'Although this section does not cover all items which might be termed living expenses [citation], the commission has long recognized (*Hemming* v. *Industrial Acc. Com.,* 13 Cal.Comp.Cases 23), and here concedes, that payments by a county of *indigent* aid are properly the subject of such a lien' (p. 586). (Italics added.) *Hemming* involved a claim of lien based upon the payment of *indigent aid* under the *general assistance* statutes (then Welf. & Inst. Code, §§ 2600, 2604, now §§ 17107, 17404), which gave the county a claim against the recipient under the conditions there stated. Such payments are distinguishable from payments made by the county under the *public assistance* statutes covering the categorical-aid programs such as AFDC. To the extent that *Wilkerson* appears to hold, without supporting statutory authority, that the county has a lien for moneys properly paid to an authorized recipient of a 'public assistance' program contained in part 3 of division 9 of the Welfare and Institutions Code and that it can assert such lien against a compensation award, it is disapproved." (11 Cal.3d at pp. 207-208.)

The distinction was subsequently highlighted in *County of Santa Barbara* v. *Workers' Comp. Appeals Bd.* (1975) 53 Cal.App.3d 820 [126 Cal.Rptr. 281]. There the county claimed a lien for "general assistance" of a nature contemplated by section 4903, subdivision (c) of the Labor

Code. There the Workers' Compensation Appeals Board denied a lien on the basis of the *Ogdon* case and the Court of Appeal summarily denied a writ of review. The Supreme Court returned the case with a reference to footnote 5 in *Ogdon*. The Court of Appeal on review concluded, "Taken together, Welfare and Institutions Code sections 17001, 17107, 17109, and 17403 leave the question of recoupment of general assistance and related matters, including the taking of liens for that purpose, to the counties and their boards of supervisors. Having established a policy of taking liens on compensation claims and that policy having been appropriately implemented in this case, the County of Santa Barbara acquired a lien for 'living expenses' that must be recognized under subdivision (c) of Labor Code section 4903." (53 Cal.App.3d at p. 827.)

From the foregoing cases we conclude that the categorization of the type of assistance granted is not the important criterion. What is really decisive is whether the program contemplates some type of recoupment, and, if so, under what circumstances.

II

The regulations adopted by the board of supervisors set forth the circumstances under which adjustments will be made in the benefits paid to a client who has met his reporting responsibility. They should be distinguished from those applicable when there is a willful failure to report or fraud (reg. 4-09). It is the former which were applied here, and if they are valid they govern the case.[4]

---

[4]We note that regulation 4-10 provides as follows: "EXHAUSTION OF EXCESS PERSONAL PROPERTY [¶] .1 If ineligibility still exists due to applicant/recipient still holding excess personal property, the client may exhaust the excess by repaying the agency for aid received, thus continue eligibility for current grant. Or, [¶] .2 A period of ineligibility shall be established. The duration of ineligibility shall be that period of time during which the excess funds would maintain the individual on a General Assistance standard. The allowances are intended to cover food, shelter, utilities, household operations, clothing, personal needs, transportation, and essential medical expenses. [¶] If there is still a collectible overpayment balance, adjustments in the grant shall continue in accordance with above regulations."

Here the applicant by leaving the county forestalled the application of that section of the regulation. Although the record reflects that he was denied aid in an adjoining county in July and cashed and apparently expended the excess personal property before returning to San Mateo County and applying for general assistance at the end of October, no claim was made that he had applied for or was entitled to the credit provided in the second paragraph of regulation 4-10. Therefore, section 4-07 was applicable.

In *Mooney* v. *Pickett* (1971) 4 Cal.3d 669 [94 Cal.Rptr. 279, 483 P.2d 1231], the court reviewed the powers of the county under the provisions of section 17001 (fn. 2 above). It quoted in part (4 Cal.3d at pp. 678-679) from *County of L.A.* v. *Dept. of Social Welfare* (1953) 41 Cal.2d 455 [260 P.2d 41], where the court had stated, "The administration of county relief to indigents, as distinguished from old age security and needy blind assistance, is vested exclusively in the county supervisors who have discretion, without supervision by the state, to determine eligibility for, the type and amount of, and conditions to be attached to indigent relief. (*Patten* v. *County of San Diego,* 106 Cal.App.2d 467. . . .)" (41 Cal.2d at p. 458); and it cited the *Patten* case.

On the other hand in *Mooney* v. *Pickett,* the court, in striking down a regulation which denied nonemergency general assistance to employable, but indigent, single men, applied the following rule: "When a statute confers upon a state agency the authority to adopt regulations to implement, interpret, make specific or otherwise carry out its provisions, the agency's regulations must be consistent, not in conflict with the statute, and reasonably necessary to effectuate its purpose. (Gov. Code, § 11374.)" (4 Cal.3d at p. 679. See also *Cooper* v. *Swoap* (1974) 11 Cal.3d 856, 864-865 [115 Cal.Rptr. 1, 524 P.2d 97] cert. den. (1974) 419 U.S. 1022 [42 L.Ed.2d 296, 95 S.Ct. 498] [invalidating regulations which purported to reduce benefits to AFDC recipients for "noncash economic benefits"]; *Morris* v. *Williams* (1967) 67 Cal.2d 733, 748 [63 Cal.Rptr. 689, 433 P.2d 697] [invalidating regulations which reduced benefits under Medi-Cal]; *Garcia* v. *Swoap* (1976) 63 Cal.App.3d 903, 909 [134 Cal.Rptr. 137] [invalidating "Prior Month Budgeting" regulations]; *Bernhardt* v. *Board of Supervisors* (1976) 58 Cal.App.3d 806, 811 [130 Cal.Rptr. 189] [invalidating county regulation which denied general assistance to "young adults" except in exceptional circumstances]; *City and County of San Francisco* v. *Superior Court* (1976) 57 Cal.App.3d 44, 49 [128 Cal.Rptr. 712] [requiring review of alleged inadequate standards of general assistance]; and *Webb* v. *Swoap, supra,* 40 Cal.App.3d 191, 196 [invalidating regulation providing for recoupment of AFDC benefits paid to applicant during period of unsuccessful appeal from an order terminating eligibility].)

The regulation in question here is not one which seeks to require repayment of benefits which were absolutely payable. They were paid under mistake of fact. The foregoing precedents establish that regulations which attempt to deprive or limit the benefits to one who is eligible are improper, and that there is a duty to furnish general assistance. The

fact that the benefits are reduced to one who has erroneously received benefits in the past is only improper if it amounts to a denial of all necessary assistance. Here the regulation provides, and the order following the administrative hearing provided, for the basic needs of the applicant as fixed by the county. He has not attempted to show that such allowance is less than required by section 17000. ▮ The categorization of applicants between those who have received excess payments and those who have not, with the former receiving fewer emoluments, has a rational basis.

The cases establishing the general powers of the county support the regulation. In *County of Santa Barbara* v. *Workers' Comp. Appeals Bd., supra,* the court stated: "It has been judicially recognized that sections 17107, 17109, and 17403 create at least a qualified obligation to repay general assistance that may be enforced in the limited ways specified in those sections. [Citations.]" (53 Cal.App.3d at p. 826.) If the county has the power to reimburse itself out of after-acquired property, and if it has the power to determine eligibility for, the type and amount of, and conditions to be attached to indigent relief, it can include in those conditions a reasonable provision for recoupment of moneys paid out by mutual mistake. In the exercise of those powers the court has upheld regulations providing for household grants of general assistance. (*Berkeley* v. *Alameda County Bd. of Supervisors* (1974) 40 Cal.App.3d 961, 970-971 [115 Cal.Rptr. 540].) Regulations may also provide for the establishment of the fact of residence. (*Adkins* v. *Leach* (1971) 17 Cal.App.3d 771, 778-779 [95 Cal.Rptr. 61].) In the case last cited we quoted *Patten* for the proposition that in the exercise of the power conferred by section 17001 the courts have no authority to interfere in the absence of a clear showing of fraud or arbitrary or capricious conduct. (17 Cal.App.3d at p. 779. See 106 Cal.App.2d at p. 470.)

In *County of L.A.* v. *Dept. of Social Welfare, supra,* the court held that prior to the adoption of constitutional and statutory provisions to the contrary, the county, in the exercise of its discretion, could consider the amount of categorical public assistance received by a family in awarding general assistance to another member of the same family. (41 Cal.2d at pp. 458-459.)

Our conclusions in this regard are strengthened by reference to *Oliva* v. *Swoap, supra,* 59 Cal.App.3d 130. There the court considered the provisions of subdivision (c) of section 11004 of the Welfare and Institutions Code which provided, as does the regulation here, for "grant

adjustments" by reducing current grants to welfare recipients who have fully reported all facts material to an accurate determination of their grants in order to recover overpayments caused by county administrative errors. The court reversed a summary judgment which had declared the practice was contrary to law and void. The case revolved about a question of statutory interpretation (59 Cal.App.3d at pp. 136-139), but it demonstrates that a program of recoupment of erroneous payments to safeguard public funds may be maintained so long as it adequately safeguards the needs of recipients consistent with the mandate of the governing statute. The regulation at bar does no less.

### III

Each side refers to principles of estoppel expounded in *Strong* v. *County of Santa Cruz* (1975) 15 Cal.3d 720 [125 Cal.Rptr. 896, 543 P.2d 264], and *City of Long Beach* v. *Mansell* (1970) 3 Cal.3d 462 [91 Cal.Rptr. 23, 476 P.2d 423]. In the former case the court stated on the basis of the latter: "The elements of the doctrine are that (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel has a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury. [Citation.]" (15 Cal.3d at p. 725.) Here the county was not apprised of the amount of the cash surrender value of the policy, and although the applicant was ignorant of the true state of facts, he had the same, if not better, means of finding out the true facts as did the county. The applicant did not rely on the expressed misapprehension of the county to his injury, but to his benefit, in that he received general assistance and yet was able to retain and later cash and enjoy the excess property. ■ So although the county's representative may have misrepresented the applicant's eligibility for general assistance, because she was not apprised of the true facts, and although she may have intended that the applicant would act on that misrepresentation and accept benefits, there was no basis for the other elements of estoppel. As in *Strong,* there was a complete ignorance by both parties of the true facts. (See 15 Cal.3d at p. 727.)

In our recent case of *Caulfield* v. *Prod* (1977) 67 Cal.App.3d 722 [137 Cal.Rptr. 27], we found that the county was estopped to raise a limitation period because all four elements of estoppel were present under the special circumstances of that case. There the county's agent had a duty to advise the applicant of facts which the applicant was not in a position to

know. (See 67 Cal.App.3d at p. 731.) In this case both the applicant and the welfare worker were equally negligent in failing to ascertain the true value of the insurance, and it was not a matter of which the latter had superior knowledge.

The trial court properly concluded that the county was not estopped to claim recoupment under the approved regulation.

The judgment is affirmed.

Elkington, J., and Lazarus, J.,* concurred.

A petition for a rehearing was denied September 20, 1977, and appellant's petition for a hearing by the Supreme Court was denied November 3, 1977.

---

*Retired judge of the superior court sitting under assignment by the Chairperson of the Judicial Council.