[No. E016615. Fourth Dist., Div. Two. Dec. 11, 1996.]

COUNTY OF SAN BERNARDINO, Plaintiff and Respondent, v.
DANIEL M. MARTINEZ, JR., Defendant and Appellant.

## COUNSEL

W. W. Steiner for Defendant and Appellant.

Daniel E. Lungren, Attorney General, Roderick E. Walston, Chief Assistant Attorney General, Carol Ann White and Mary A. Roth, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WARD, J.**—Defendant and appellant Daniel M. Martinez, Jr. (father), appeals after he was ordered to pay $5,615 in reimbursement for Aid to

Families with Dependent Children (AFDC) paid on behalf of his minor daughter, Melissa (minor). Father contends that plaintiff and respondent County of San Bernardino (County) is not entitled to reimbursement because the minor should not have been found eligible for AFDC. We affirm.

FACTS

The facts are essentially not in dispute.

Father and his wife had one child, the minor herein, who was born in 1976. In 1991, when the minor was almost 15 years old, father and his wife separated. The wife, with whom the minor apparently lived for a short time after the separation, left California in September of 1992. The minor did not continue living with her. Father wanted the minor to live with him, but, already pregnant, she lived instead with her boyfriend.[1]

In January 1993, the minor applied for AFDC benefits. The AFDC payments began in January 1993 and stopped in June 1994. The minor reached her majority in May of 1994, after which father was no longer liable for her support.

The County filed an action in October of 1993, seeking reimbursement from father for the AFDC payments. Father admitted paternity and alleged that, after his wife left, he had paid the minor $50 per week in direct support, and had maintained the minor on his medical insurance plan.

The court calculated that, after allowing father a credit of $162 per month for medical insurance payments, and estimating that father had visitation with the minor 20 percent of the time, the amount of monthly support due under the guidelines for a parent with his income was $445 per month. The total support due on the minor's behalf for the 17 months she received AFDC was $7,565. The court reduced this amount by another $1,950, the amount father could prove he paid directly for the minor's support. The court ordered father to pay the remaining reimbursement balance of $5,615.

Father now appeals, contending he should not be liable for reimbursement because he was willing to provide a home for the minor and was using economic coercion to persuade her to return home; his plan was "thwarted," however, when the County stepped in to provide the minor with funds to defy him.

[1]The child with whom the minor was pregnant, and another child, were born while the minor was receiving AFDC payments.

DISCUSSION

■ Father claims that the minor obtained AFDC funds in the first instance by making false representations on her application; had the truth been told, he argues, the County should never have found her eligible for aid, and thus he would not have been liable for any reimbursement. Father also blames the County for failing to adequately investigate the minor's eligibility. Had it done so, it would not have paid AFDC and he would not be responsible for reimbursement. Father further contends that he should not be liable to reimburse any AFDC funds which were paid for the support of the minor's two children, as opposed to funds for the minor's own support.

## I. *"Correction of Record"*

Father first spends a portion of his brief arguing either that this court should order a "correction" of the record, or that the County should supply a "missing" document he requested be placed in the clerk's transcript on appeal. We note in passing that, as the appellant, it is father's obligation, not the responding party's, to provide an adequate record.

We also observe, however, that pursuant to a request to the superior court under California Rules of Court, rule 12(a), the missing documents (the minor's original application for AFDC and a letter from the County Department of Public Social Services (DPSS) summarizing the amounts of aid paid to the minor) have been transmitted to this court as exhibits. We pass on, therefore, to the substantive arguments.

## II. *County Recoupment of Funds*

Father relies on *Richards* v. *Gibson* (1979) 90 Cal.App.3d 877 [153 Cal.Rptr. 561] and *County of Fresno* v. *Walker* (1981) 115 Cal.App.3d 814 [171 Cal.Rptr. 572], for the proposition that, because he was a parent ready, willing, and able to furnish support for his child, he should not be liable to reimburse third parties if they voluntarily supported the child.

In *Richards* v. *Gibson, supra,* 90 Cal.App.3d 877, the parents were divorced and the father had obtained court-ordered custody of his children. The mother illegally refused to return the children after out-of-state visitation, and went on welfare. Although the father's California custody order remained valid and he had obtained three Utah orders for custody, he was unsuccessful in having the children returned to him. In these circumstances, the court held the father was not required to reimburse the Utah welfare payments; the governmental entity that had paid the welfare benefits must

look to the noncustodial parent (the mother) for reimbursement of the welfare funds.

In *County of Fresno* v. *Walker, supra,* 115 Cal.App.3d 814, the father had been awarded custody and control over his minor daughter by a divorce decree. Over the father's protests, the minor daughter, who had become pregnant, left the father's home and went to live with her mother during pregnancy. The daughter received public assistance benefits up until she turned 18. After her 18th birthday, the daughter returned to live with the father. The County of Fresno sought reimbursement from the father for the public assistance benefits. The trial court found in favor of the father on the county's action for reimbursement, holding that the daughter had abandoned her father without just cause. The Court of Appeal affirmed.

It should be noted, however, that at the time *Richards* and *Walker* were decided, former Civil Code section 208 (see now Fam. Code, § 3951) provided: "A parent is not bound to compensate the other parent, or a relative, for the voluntary support of his child, without an agreement for compensation, nor to compensate a stranger for the support of a child who has abandoned the parent without just cause."

In 1982, however, the Legislature amended former Civil Code section 208 in an urgency measure to provide: "A parent is not bound to compensate the other parent, or a relative, for the voluntary support of his child, without an agreement for compensation, nor to compensate a stranger for the support of a child who had abandoned the parent without just cause. *Nothing in this section shall be construed so as to relieve the parent of the obligation to support a child during any period in which the state, county, or other governmental entity furnishes support for the child.*" (Stats. 1982, ch. 1276, § 1, p. 4710, italics added.)[2] This amendment was included with a number of other provisions having to do with requiring parental reimbursement to governmental entities of funds expended for the care, support, correction, etc., of children. The amendment to former Civil Code section 208, in this context, was intended to allow governmental entities the greatest possible latitude in recovering public funds expended for the support of children and

---

[2]Family Code section 3951 maintains the provisions of former Civil Code section 208, as amended, but has separately designated the paragraphs as follows:

"(a)   A parent is not bound to compensate the other parent, or a relative, for the voluntary support of the parent's child, without an agreement for compensation.

"(b)   A parent is not bound to compensate a stranger for the support of a child who has abandoned the parent without just cause.

"(c)   Nothing in this section relieves a parent of the obligation to support a child during any period in which the state, county, or other governmental entity provides support for the child."

to alter the case law holding otherwise. Obviously, the child's abandonment of a parent now relieves the parent of the obligation for support *except* when the support is furnished by a governmental entity.

Assuming, without deciding, that the actions of the minor here, like those of the daughter in *Walker*, constituted an abandonment of the father without just cause, under Family Code section 3951, father nevertheless remains liable for reimbursement of County welfare funds, even though he would not be liable to another stranger who provided support for the minor.

Father apparently further contends, citing *Lucido* v. *Rippeto* (1977) 73 Cal.App.3d 1 [140 Cal.Rptr. 535], that, where the County has the right to reimbursement of overpaid benefits, recoupment must be sought from the recipient. *Lucido* is inapposite. There, an applicant for general assistance negligently (but not fraudulently) did not know the cash surrender value of a life insurance policy. The eligibility worker also did not know the value of the insurance policy and, assuming a low value, found the applicant eligible for benefits. In fact, the value was sufficient to render the applicant ineligible for benefits. The county thus erroneously paid three months of general assistance benefits. The court held the county was not estopped to claim reimbursement of those benefits by reductions in subsequent grants, as the county had not made any fraudulent misrepresentation relied upon by the applicant to his detriment.

Even though father claims the minor obtained benefits fraudulently (i.e., obtained overpaid benefits) we are not here concerned with whatever separate proceedings the County may institute against the minor for such alleged unlawful overpayment. (In fact, there is no evidence in this record of any such alleged fraud.) The sole issue here is father's obligation to support his daughter. There is also no suggestion whatever that the County did anything which should estop it from seeking reimbursement for the support paid. Thus, *Lucido* v. *Rippeto*, *supra*, 73 Cal.App.3d 1, has nothing to do with the issues here.

Father's claim he was deprived of due process is without merit. He complains that the minor obtained welfare benefits only by lying on her application (i.e., falsely stating that the father was absent from the home). That is, DPSS was negligent in not investigating, but in accepting at face value the minor's representation that father absented himself from the minor's home, and thus AFDC should not have been paid and he should not be liable for reimbursement. This is essentially a reiteration of father's contention that he should not be liable for reimbursement because the minor abandoned *him* rather than the other way around; as already stated, this claim

is ineffective in the face of the express statutory exception for support provided by a governmental entity.

## III. *Reimbursement for the Minor's Support*

Father finally contends that, to the extent AFDC benefits were paid for the care and support of the minor's own two children, he should not be liable for reimbursement. The reimbursement here was calculated on the basis of statewide uniform child support guidelines. (Fam. Code, § 4055 et seq.) So long as the AFDC benefits did not exceed this amount, father is effectively being asked to reimburse only those amounts which he would have been liable to pay in any event, with his income, for the support of his own child. (See Welf. & Inst. Code, § 11350.) He was credited with amounts of support he actually made. He was held liable only for the balance. The order was proper.

## DISPOSITION

The judgment is affirmed.

Hollenhorst, Acting P. J., and McKinster, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 12, 1997.