Opinion
 

 HUFFMAN, J.
 

 County of San Diego (County) paid benefits under the Aid to Families with Dependent Children (AFDC) program to Catherine Lamb’s minor daughter, Sarah, after Sarah left Catherine’s home and had a baby.
 
 [1]
 
 Catherine appeals from a judgment ordering her to pay County $3,377 in retroactive child support to reimburse County for part of those benefits. Catherine contends the court erred in ordering her to reimburse County
 
 *848
 
 because, among other things, the AFDC reimbursement statute (Welf. & Inst. Code,
 
 [2]
 
 § 11350) provides for recoupment of AFDC benefits only from the “noncustodial parent” of the aided child—in this case, the father of Sarah’s baby. We agree and reverse the judgment.
 

 Factual and Procedural Background
 

 Catherine is the mother of Sarah, who was bom in June 1978. In June 1993, Sarah apparently left home over Catherine’s objections and refused to return. In March 1994, when she was 15 years old, Sarah gave birth to a son, Alexander, allegedly fathered by David Torres.
 
 [3]
 
 That same month, Sarah began receiving AFDC benefits from County. In October 1994, County filed a complaint against Catherine under section 11350, seeking to recoup those benefits through an order of retroactive and current child support. Ultimately, the parties agreed to settle County’s claim for support from March 1994 through September 1994 for $600.
 

 In October 1995, County filed a supplemental complaint against Catherine, seeking to recoup AFDC benefits paid to Sarah beginning in August 1995. In response to County’s complaint and subsequent notice of motion, Catherine alleged that at all times after Sarah left home, she was ready, willing, and able to support Sarah, but Sarah refused to accept Catherine’s control. Relying on
 
 County of Fresno
 
 v.
 
 Walker
 
 (1981) 115 Cal.App.3d 814 [171 Cal.Rptr. 572], Catherine argued that County’s request for reimbursement of AFDC benefits paid to Sarah and Alexander was barred because Sarah had abandoned Catherine without just cause. Catherine also argued, among other things, that County’s claim against her was not within the scope of section 11350.
 

 The court rejected Catherine’s arguments and ordered Catherine to pay $3,377 in child support for the period from August 1995 through June 1996, when Sarah reached the age of 18. Catherine appeals.
 

 Discussion
 

 I
 

 Determination of Noncustodial Parent Status
 

 “AFDC is a categorical assistance program that the United States Congress established under the Social Security Act of 1935 .... Congress
 
 *849
 
 designed AFDC ‘to provide financial assistance to needy dependent children and the parents or relatives who live with and care for them.’ [Citation.]”
 
 (California Homeless & Housing Coalition
 
 v.
 
 Anderson
 
 (1995) 31 Cal.App.4th 450, 453 [37 Cal.Rptr.2d 639].)
 

 In California, section 11250 sets forth the basic eligibility standards for AFDC, as follows:
 

 “Aid, services, or both shall be granted under the provisions of this chapter ... to families with related children under the age of 18 years . . . in need thereof because they have been deprived of parental support or care due to:
 

 “(a) The death, physical or mental incapacity, or incarceration of a parent.
 

 “(b) The unemployment of a parent or parents.
 

 “(c) Continued absence of a parent from the home due to divorce, separation, desertion, or any other reason, except absence occasioned solely by reason of the performance of active duty in the uniformed services of the United States. . . .”
 

 Aid may be available to the parent or other caretaker relative with whom the needy child is living. (§ 11203.) However, “[t]he reference point of the [eligibility] statute is the deprived child.”
 
 (Hypolite
 
 v.
 
 Carlson
 
 (1973) 32 Cal.App.3d 979, 984 [108 Cal.Rptr. 751].) Here, as County acknowledges, the AFDC benefits Sarah received were attributable to the birth of her baby, Alexander. Thus, Alexander was the deprived child, who was eligible for AFDC because of the “continued absence” of his father from the home.
 

 When a county has paid AFDC benefits on behalf of a needy child, section 11350 authorizes the county to seek reimbursement. (See
 
 City and County of San Francisco
 
 v.
 
 Thompson
 
 (1985) 172 Cal.App.3d 652, 657-658 [218 Cal.Rptr. 445].) Specifically, section 11350 provides:
 

 “(a) In any case of separation or desertion of a parent or parents from a child or children which results in aid under this chapter being granted to that family, the noncustodial parent or parents shall be obligated to the county for an amount equal to the following:
 

 “(1) The amount specified in an order for the support and maintenance of such family issued by a court of competent jurisdiction; or in the absence of such court order, the amount specified in paragraph (2).
 

 
 *850
 
 “(2) The amount of support which would have been specified in an order for the support and maintenance of the family during the period of separation or desertion provided that any such amount in excess of the aid paid to the family shall not be retained by the county, but disbursed to the family.
 

 “(3) The obligation shall be reduced by any amount actually paid by such parent directly to the custodian of the child or to the district attorney of the county in which the child is receiving aid during the period of separation or desertion for the support and maintenance of the family.”
 

 By its terms, section 11350 imposes a reimbursement obligation on “the noncustodial parent or parents.” County contends “Catherine became an involuntary noncustodial parent in June 1993, when Sarah left the maternal home.” However, the mere fact that Catherine is a “noncustodial parent,” in a general sense, does not mean that Catherine is the noncustodial parent upon whom section 11350 imposes a reimbursement obligation. The term noncustodial parent must be read in context. Under section 11350, the condition which triggers the noncustodial parent’s reimbursement obligation is the “separation or desertion of a parent or parents from a child or children which results in aid under this chapter being granted to
 
 that
 
 family . . . .” (§ 11350, subd. (a), italics added.) Thus, the reference point of the reimbursement statute is the same as that of the eligibility statute, namely, the needy child who has been deprived of parental support or care due to the absence of one or more of the child’s parents from the child’s home. (See
 
 Hypolite
 
 v.
 
 Carlson, supra,
 
 32 Cal.App.3d at p. 984.) It follows that the noncustodial parent upon whom section 11350 imposes a reimbursement obligation is the parent whose absence made the needy child eligible for aid under the AFDC program in the first place.
 

 Here, Sarah did not become eligible for AFDC benefits when she left her mother’s home in June 1993. Sarah became eligible for AFDC benefits only after she gave birth to Alexander in March 1994 and became Alexander’s custodial parent. As County implicitly acknowledges, the needy child in this case was Alexander, who qualified for AFDC benefits because of his father’s absence from the home. Thus, the noncustodial parent to whom section 11350 applies in this case is Alexander’s father—putatively, David Torres—not Sarah’s mother, Catherine.
 

 County asserts Catherine had a duty to support Sarah, regardless of where Sarah lived.
 
 [4]
 
 County further asserts that by receiving AFDC benefits, Sarah, automatically assigned any support rights she had to County pursuant to
 
 *851
 
 section 11477.
 
 [5]
 
 However, it does not follow from those assertions that County was entitled to enforce support rights Sarah may have had against Catherine through an action under section 11350. Even assuming arguendo any support rights Sarah had against Catherine survived Sarah’s abandonment of Catherine’s home,
 
 [6]
 
 section 11350 does not provide a procedure for enforcement of those rights. As we have explained, section 11350 specifically imposes a reimbursement obligation only on the noncustodial parent or parents of the needy child—in this case, Alexander. Section 11350 does not provide a vehicle for seeking reimbursement of AFDC benefits from the noncustodial parent of a minor who is the custodial parent of the needy child.
 

 In
 
 County of San Bernardino
 
 v.
 
 Martinez
 
 (1996) 51 Cal.App.4th 600 [59 Cal.Rptr.2d 142], the court affirmed a reimbursement order against the father of a minor who collected AFDC benefits while living with her boyfriend. In that case, however, the court did not address the language of section 11350, nor did it seek to determine whether the defendant father was the noncustodial parent on whom section 11350 imposes a reimbursement obligation. “[A] case is not authority for a point that was not actually decided therein.”
 
 (Gantt
 
 v.
 
 Sentry Insurance
 
 (1992) 1 Cal.4th 1083, 1098 [4 Cal.Rptr.2d 874, 824 P.2d 680].) Accordingly, the decision in
 
 Martinez
 
 does not affect our interpretation of section 11350, and it does not alter our conclusion that Catherine was not obligated under that statute to reimburse County for AFDC benefits which Sarah collected because of the birth of her son, Alexander.
 

 We note that the Family Code provides “an avenue for collection of child support” separate from that contained in section 11350. (See
 
 State of Ohio
 
 v.
 
 Barron
 
 (1997) 52 Cal.App.4th 62, 68-69 [60 Cal.Rptr.2d 342].) Specifically, Family Code section 4000 provides: “If a parent has the duty to provide for the support of the parent’s child and willfully fails to so provide, the other parent, or the child by a guardian ad litem, may bring an action against the parent to enforce the duty.” Under Family Code section 4002, subdivision (b), “[i]f the county furnishes support to a child, the county has the same
 
 *852
 
 right as the child to secure reimbursement and obtain continuing support.” It is important to note, however, that the Family Code provisions apply only when the parent “willfully fails” to fulfill his or her duty to support the child. It is doubtful whether a parent who remains willing to support his or her child in the family home can be deemed to have “willfully failed” to provide support to a child who insists on living away from that home. In any event, we need not decide that issue here because County did not rely on Family Code sections 4000 and 4002 in seeking reimbursement from Catherine in this case.
 

 II
 

 Private Attorney General Fees
 

 Catherine requests an award of attorney fees pursuant to Code of Civil Procedure section 1021.5. County does not address the issue. We conclude Catherine is entitled to such an award and remand to the trial court for a determination of the amount of fees to which Catherine is entitled for her attorney’s services both at the trial and the appellate level. (See
 
 Laurel Heights Improvement Assn.
 
 v.
 
 Regents of University of California
 
 (1988) 47 Cal.3d 376, 425-427 [253 Cal.Rptr. 426, 764 P.2d 278] [where Court of Appeal’s decision provides basis for fees in the first instance, Court of Appeal may determine right to attorney fees under Code Civ. Proc., § 1021.5].)
 

 Code of Civil Procedure section 1021.5, which is a codification of the “private attorney general doctrine,” authorizes a court to award attorney fees to a “successful party” when: “ ‘(1) the action has resulted in the enforcement of an important right affecting the public interest, (2) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, and (3) the necessity and financial burden of private enforcement make the award appropriate.’ ”
 
 (Family Planning Specialists Medical Group, Inc.
 
 v.
 
 Powers
 
 (1995) 39 Cal.App.4th 1561, 1567 [46 Cal.Rptr.2d 667], quoting
 
 Planned Parenthood
 
 v.
 
 Aakhus
 
 (1993) 14 Cal.App.4th 162, 169-170 [17 Cal.Rptr.2d 510].) “The fundamental objective of the private attorney general theory is to encourage suits effecting a strong public policy by awarding substantial attorney fees to those whose successful efforts obtain benefits for a broad class of citizens.”
 
 (Hull
 
 v.
 
 Rossi
 
 (1993) 13 Cal.App.4th 1763, 1767 [17 Cal.Rptr.2d 457].)
 

 Here, there is no question Catherine is the “successful party” based on our decision that section 11350 does not provide a vehicle for seeking reimbursement of AFDC benefits from the noncustodial parent of a minor
 
 *853
 
 who is the custodial parent of the needy child. Further, we conclude that Catherine’s successful resistance to County’s attempt to recoup AFDC benefits from her under section 11350 “has resulted in the enforcement of an important right affecting the public interest [and that] a significant benefit . . . has been conferred on ... a large class of persons . . . .”
 
 (Hull
 
 v.
 
 Rossi, supra,
 
 13 Cal.App.4th at p. 1767.) Here, the benefit conferred is the proper interpretation of section 11350. Based on our decision, parents like Catherine whose children abandon the family home to raise children of their own will not be forced to bear the financial burden that appropriately lies with the absent parent of the needy child.
 

 We also conclude that “the necessity and financial burden of private enforcement make the award appropriate . . . .”
 
 (Hull
 
 v.
 
 Rossi, supra,
 
 13 Cal.App.4th at p. 1767.) “Since this suit was brought by a public entity . . . the necessity of private rather than public enforcement is evident.”
 
 (County of San Luis Obispo
 
 v.
 
 Abalone Alliance
 
 (1986) 178 Cal.App.3d 848, 868 [223 Cal.Rptr. 846].) Moreover, the “financial burden” criterion is met because the financial burden placed on Catherine to defend this matter was out of proportion to her individual stake in the case. Indeed, County itself noted in its appellate brief that Catherine’s legal fees would “probably equal or exceed the amount of the support order.” Accordingly, Catherine is entitled to an award of attorney fees under Code of Civil Procedure section 1021.5.
 

 Disposition
 

 The judgment is reversed and the case is remanded to the trial court with directions to enter judgment in favor of defendant Catherine Lamb and to determine the amount of fees to which defendant is entitled for her attorney’s services both at the trial and the appellate level.'Defendant to recover costs on appeal.
 

 Kremer, P. L, and Haller, J., concurred.
 

 A petition for a rehearing was denied May 26, 1998, and respondent’s petition for review by the Supreme Court was denied August 12, 1998.
 

 [1]
 

 To avoid confusion, we refer to the Lambs by their first names.
 

 [2]
 

 All statutory references are to the Welfare and Institutions Code unless otherwise specified.
 

 [3]
 

 County filed an action against David Torres in September 1995 to establish paternity of and child support for Alexander. The record on appeal does not contain any information regarding the result of that action.
 

 [4]
 

 County acknowledges Catherine had no duty to support Alexander. (See Fam. Code, § 3930 [a parent does not have the duty to support a child of the parent’s child].)
 

 [5]
 

 Section 11477 provides in part: “As a condition of eligibility for aid paid under this chapter each applicant or recipient shall: [¶] (a) (1) Assign to the county any rights to support from any other person the applicant or recipient may have in his or her own behalf or in behalf of any other family member for whom the applicant or recipient is applying for or receiving aid, not exceeding the total amount of cash assistance provided to the family under this chapter. Receipt of public assistance under this chapter shall operate as an assignment by operation of law.”
 

 [6]
 

 Because we conclude section 11350 did not impose on Catherine an obligation to reimburse County for AFDC benefits collected by Sarah due to the birth of her son, Alexander, we need not address Catherine’s alternate contention that she owed no duty of support to Sarah because Sarah abandoned the family home without just cause.