Filed 10/31/11

# IN THE SUPREME COURT OF CALIFORNIA

PORFIRIO SERRANO et al.,      )
                                        )
          Plaintiffs and Appellants,    )
                                          )             S183372
          v.                      )
                                          )      Ct.App. 2/3 B215837
STEFAN MERLI PLASTERING     )
CO., INC.,                      )
                                          )        Los Angeles County
          Defendant;         )   Super. Ct. No. BC324031
                                          )
COAST COURT REPORTERS, INC.,  )
                                          )
          Objector and Respondent.    )
_____)

Code of Civil Procedure section 1021.5 authorizes an award of attorney fees to a "private attorney general," that is, a party who secures a significant benefit for many people by enforcing an important right affecting the public interest.[1]  In *Adoption of Joshua S.* (2008) 42 Cal.4th 945 (*Joshua S.*), we decided that a section 1021.5 fee award may not be imposed on a litigant who did nothing to adversely affect the public interest, but simply lost an important appellate case in the course of pursuing his or her private rights.  (*Joshua S.*, at p. 958.)

In this case, plaintiffs objected to paying an extra fee for an expedited transcript of a deposition noticed by defendant.  They won an appeal establishing

---

[1]    Further statutory references are to the Code of Civil Procedure.

1

that trial courts have the authority to determine the reasonableness of fees charged by deposition reporters to nonnoticing parties. On remand, the trial court found that the fee charged to plaintiffs was unreasonable, but denied their motion for an award of attorney fees under section 1021.5. Relying on *Joshua S.*, the court concluded that plaintiffs had acted in their own interest and only incidentally conferred a benefit on other litigants. The Court of Appeal, in a split decision, affirmed. We granted plaintiffs' petition for review, in order to clarify the scope of our holding in *Joshua S.*

We conclude that *Joshua S.* has no application here. Deposition reporters are officers of the court, regulated by statute, who perform a public service of considerable importance to litigants and members of the public. The reporting service here did not merely seek to vindicate its private rights. It defended its institutional interest in controlling the fees it charges, and sought to shield itself from judicial review of its conduct as a ministerial officer of the court. Moreover, it was found to have charged plaintiffs an unreasonable fee. The courts below erred by concluding that the service did nothing adverse to the public interest, and that plaintiffs' appeal did not involve an important right affecting the public interest.

BACKGROUND

In the underlying personal injury action, which eventually settled, defendant took the deposition of a plaintiffs' expert and requested an expedited transcript. The reporting service, Coast Court Reporters (Coast), asked plaintiffs' counsel whether he too wanted an expedited transcript. He did, and Coast sent counsel a bill including a fee for expediting the copy.[2] Counsel objected to the

_____

[2] The fee for expediting delivery was $261.56, in addition to $373.65 for a certified copy, $14.00 for exhibits, $10.00 to e-mail an ASCII version, and $40.00

*(footnote continued on next page)*

2

additional charge. Coast refused to expedite the transcript without payment of the fee. Counsel asked the trial court to require Coast to provide the transcript without the extra cost. Coast and plaintiffs' counsel agreed that the court's ruling would determine the validity and reasonableness of its fee, and would govern the fees for other expedited transcripts in the action. Coast delivered the transcript to plaintiffs, deferring payment until the court ruled.

The trial court found that Coast's practice of charging the nonnoticing party a fee for expedited transcripts was "unconscionable." However, the court believed it had no authority to determine how much a deposition reporter may charge for transcripts. It ordered plaintiffs to pay the full amount charged by Coast, but invited them to seek appellate review. Plaintiffs did so, and prevailed. (*Serrano v. Stefan Merli Plastering Co., Inc.* (2008) 162 Cal.App.4th 1014, 1037 (*Stefan I*).)

In *Stefan I*, the Court of Appeal observed that depositions must be conducted under the supervision of an officer qualified to administer an oath. (§ 2025.320.) While the officer and the stenographer who records the testimony need not be the same person, they usually are, and that practice was followed here.[3] (*Stefan I*, *supra*, 162 Cal.App.4th at p. 1033.) The court further observed that deposition officers are ministerial officers of the court (*Burns v. Superior*

---

*(footnote continued from previous page)*

for "Shipping/Administration." The record does not disclose the amount charged to defendant, the noticing party. A declaration by the president of Coast states that the page rate for expedited certified copies "is less than one-half the cost of the original transcript page rate which is charged to the party who noticed the deposition."

[3] The *Stefan I* court noted that references to deposition reporters in its opinion were based on the assumption that the reporter was also acting as deposition officer. (*Stefan I*, *supra*, 162 Cal.App.4th at p. 1033, fn. 8.) We adopt the same usage here.

*Court* (1903) 140 Cal. 1, 9), who are subject to the court's statutory and inherent authority over judicial proceedings (§ 128, subd. (a)(5); *Walker v. Superior Court* (1991) 53 Cal.3d 257, 266–267). [4] (*Stefan I*, *supra*, 162 Cal.App.4th at p. 1035.)

Section 2025.510, subdivision (c) allows a nonnoticing party to obtain a copy of a deposition transcript at its own expense. *Stefan I* reasoned that the trial court "obviously should be able to enforce this statutory right by ordering the deposition reporter to provide a copy of the transcript . . . on condition of the party's payment of the 'expense' of the copy." (*Stefan I*, *supra*, 162 Cal.App.4th at p. 1035, citing § 128.5, subd. (a)(5).) Coast argued that while the court could order a reporter to provide a copy of a transcript, it could not regulate the amount of the fee charged by the reporter. The Court of Appeal disagreed, pointing out that the nonnoticing party has no contractual relationship with the reporter, who is selected by the noticing party. Thus, the nonnoticing party is in no position to bargain for lower rates. Indeed the reporter may have an incentive to offer lower rates to the noticing party while shifting some of its costs of service to the nonnoticing party. (*Stefan I*, *supra*, 162 Cal.App.4th at pp. 1035-1036.)

"In light of the importance of deposition testimony in a pending action and the nonnoticing party's lack of bargaining power, a trial court must be cautious not to lend assistance to overreaching by the deposition reporter. For a deposition reporter to refuse to provide a copy of a transcript to a nonnoticing party in a

---

[4]     Section 128, subdivision (a)(5) provides that every court has the power "[t]o control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto." In *Walker v. Superior Court*, *supra*, 53 Cal.3d at page 267, we noted that while section 128 sets out some of the courts' inherent powers, those powers are derived from the California Constitution (art. VI, § 1) "and are not confined by or dependent on statute."

4

pending action unless the party agrees to pay an unreasonable fee would be grossly unfair." (*Stefan I*, *supra*, 162 Cal.App.4th at p. 1036.) Thus, "the only monetary condition that the court may properly place upon the nonnoticing party's right to receive a copy of the deposition transcript would be payment of a *reasonable* fee." (*Ibid*.) The court found support for this conclusion in section 2025.570, subdivision (a), which applies to nonparties, and specifies that the fee charged to "any person requesting a copy" of a deposition transcript must be "reasonable."[5] It would be "anomalous indeed," said the court, "for the Legislature to require a deposition officer to provide a copy of a deposition transcript to a nonparty for a reasonable fee while denying the same protection for a litigating party." (*Stefan I*, at pp. 1036-1037.)

*Stefan I* distinguished and disagreed with *Urban Pacific Equities Corp. v. Superior Court* (1997) 59 Cal.App.4th 688 (*Urban Pacific*), which had led the trial court to believe it had no authority to set Coast's fee. The *Urban Pacific* court rejected a nonnoticing party's argument that it was entitled to obtain a copy of a deposition transcript by serving a "business records subpoena." (*Urban Pacific*, *supra*, 59 Cal.App.4th at p. 693.) By way of introduction, however, the court observed that "there is no statute regulating the fees charged by private reporting firms, and deposition reporters are free to charge all the market will bear." (*Id.* at pp. 691-692.) The *Stefan I* court was not persuaded by this dictum. It noted that a nonnoticing party has no market interaction with the deposition reporter, and

---

5    Section 2025.570, subdivision (a) provides, in relevant part: "[A] copy of the transcript of the deposition testimony . . . shall be made available by the deposition officer to any person requesting a copy, on payment of a reasonable charge set by the deposition officer."

"absent timely judicial intervention, could be placed at the mercy of the reporter's arbitrary pricing policy." (*Stefan I*, *supra*, 162 Cal.App.4th at p. 1037, fn. 12.)

The *Urban Pacific* court had also commented that former section 2025.5, the predecessor of section 2025.570, offered no solution to the problem of excessive deposition charges. The court evidently read the statutory reference to "a reasonable charge set by the deposition officer" as granting the reporter free rein, even though it viewed the charges in the case before it as "obviously excessive." (*Urban Pacific*, *supra*, 59 Cal.App.4th at p. 692; see fn. 5, *ante*.) It stated, "Unless [the reporter] concedes that its charges are *not* 'reasonable,' we do not see how this new statute[6] would affect the problem faced by [the appellant], particularly since the new statute appears to be for the benefit of nonparties, not parties." (*Urban Pacific*, at p. 692, fn. 7.) The *Stefan I* court took exception to this view. "A trial court's failure to intervene to prevent such abuse of a nonnoticing party would amount to official toleration of such conduct. To the extent that *Urban Pacific* suggests that such a result is required by judicial impotency in such circumstances, we decline to follow it." (*Stefan I*, *supra*, 162 Cal.App.4th at p. 1037, fn. 12.)

*Stefan I* concluded that the trial court in the pending action is in the best position to resolve deposition fee disputes, in a manner consistent with the procedures routinely followed to determine the costs recoverable by a prevailing party. (*Stefan I*, *supra*, 162 Cal.App.4th at pp. 1038-1039.) Because the trial court had failed to exercise its discretion as to whether Coast's charges were reasonable in this case, the Court of Appeal remanded with directions to make that determination and order a refund of any amounts found to be excessive. (*Id*. at pp.

---

**6** Former section 2025.5 took effect in 1998, the year following the *Urban Pacific* decision. (See Stats. 1997, ch. 395, § 2, pp. 2680-2681.)

1039-1040.) On remand, the trial court ruled that "under the circumstances presented," the entire charge for expediting the transcript was unreasonable. It ordered that amount refunded to plaintiffs, with interest.

Plaintiffs then filed a motion for attorney fees under section 1021.5. They asked for an award of up to $50,000, though counsel asserted that this would leave him with many hours of uncompensated time. Plaintiffs claimed they met all the statutory conditions for a fee award: They had successfully enforced an important right affecting the public interest, conferring a significant benefit on a large class of persons, and the necessity and financial burden of private enforcement made an award appropriate.[7] Coast opposed the motion, contending that plaintiffs had sought not to enforce a public right but merely to avoid paying a fee for deposition transcripts. Coast disputed plaintiffs' claim that they had vindicated an important public right, and relied on *Joshua S.*, *supra*, 42 Cal.4th 945, for the proposition that a party who has done nothing to adversely affect the public interest other than being on the losing side of an appeal should not be subjected to a fee award under section 1021.5.

The trial court denied the fee motion, explaining: " '[S]ection 1021.5 does not authorize an award of attorney fees against an individual who has done nothing to adversely affect the rights of the public or a substantial class of people

---

[7] Section 1021.5 provides, in relevant part: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."

other than raise an issue in the course of private litigation that could establish legal precedent adverse to a portion of the public. . . .' ([*Joshua S.*, *supra*,] 42 Cal.4th 945, 949.) Here that is exactly what occurred. Moving party was not trying to vindicate the public's interest. Rather, he was trying to protect his own interest and in so doing, by virtue of a published opinion, he conferred a benefit to litigants."

The Court of Appeal affirmed over the dissent of Justice Croskey, the author of the *Stefan I* opinion. The majority held that plaintiffs had failed to satisfy the first element of section 1021.5, because their action did not result in the enforcement of an important right affecting the public interest. The majority deemed *Joshua S.* on point and controlling. In *Joshua S.*, former domestic partners had litigated the validity of a "second parent" adoption and in so doing established the lawfulness of this form of adoption.[8] (*Joshua S.*, *supra*, 42 Cal.4th at p. 952.) Here, the Court of Appeal majority decided that Coast occupied a position similar to that of the birth mother in *Joshua S.*, who sought to invalidate the adoption. It viewed the litigation in *Stefan I* as a "private business disagreement" between plaintiffs and Coast, which happened to involve an issue that was resolved in a published opinion.

The majority concluded that plaintiffs' action did not qualify as public interest litigation. "Coast was not purporting to represent the public and its conduct addressed in our opinion had not been impairing the statutory or constitutional rights of the public or even a large or significant class of people." It emphasized that Coast had "waived its fees and delivered all of the deposition

---

[8]     In a "second parent" adoption, the child is adopted by the partner of the legal parent, without terminating the parental rights and responsibilities of the legal parent. (*Sharon S. v. Superior Court* (2003) 31 Cal.4th 417, 422, fn. 2.)

transcripts to plaintiffs pending the trial court's determination of the reasonableness of the expedited-service fee." The majority viewed the *Stefan I* opinion as a reiteration of existing statutory law governing deposition fees, and a correction of "a garden-variety error by a trial court that had mistakenly believed it lacked the authority to limit court reporter fees."

The dissenting opinion would have reversed and remanded for the trial court to consider all the elements required for an award of fees under section 1021.5. In the dissent's view, Coast could not be compared to the losing parent in *Joshua S.* It had engaged in conduct against the public interest and violated its statutory duty as a deposition officer by refusing to deliver a transcript without payment of an unreasonable fee.

## DISCUSSION

On appeal from an award of attorney fees under section 1021.5, " 'the normal standard of review is abuse of discretion. However, de novo review of such a trial court order is warranted where the determination of whether the criteria for an award of attorney fees and costs in this context have been satisfied amounts to statutory construction and a question of law.' " (*Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169, 1175; accord, *Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1213.) Resolution of this case turns primarily on interpretations of section 1021.5 and the *Joshua S.* and *Stefan I* opinions, which present questions of law.

Section 1021.5 authorizes an award of fees when (1) the action "has resulted in the enforcement of an important right affecting the public interest," (2) "a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons," and (3) "the necessity and financial burden of private enforcement . . . are such as to make the award appropriate." (§ 1021.5; see *Woodland Hills Residents Assn., Inc. v. City Council* (1979) 23

9

Cal.3d 917, 935 (*Woodland Hills*).)  In *Joshua S.*, we carved out a limited exception to these qualifications:  "[E]ven when an important right has been vindicated and a substantial public benefit conferred, and when a plaintiff's litigation has transcended her personal interest,[9] . . . section 1021.5 was not intended to impose fees on an individual seeking a judgment that determines only his or her private rights, but who has done nothing to adversely affect the public interest other than being on the losing side of an important appellate case." (*Joshua S.*, *supra*, 42 Cal.4th at p. 958.)

We reasoned that the terms of the statute reflect an implicit understanding by the Legislature that fee awards are to be imposed only on parties whose conduct adversely affected the public interest.  "Section 1021.5 authorizes fees for 'any action which has resulted in the *enforcement* of an important right affecting the public interest . . . .'  (Italics added.)  The enforcement of an important right affecting the public interest implies that those on whom attorney fees are imposed have acted, or failed to act, in such a way as to violate or compromise that right, thereby requiring its enforcement through litigation.  It does not appear to encompass the award of attorney fees against an individual who has done nothing to curtail a public right other than raise an issue in the context of private litigation that results in important legal precedent."  (*Joshua S.*, *supra*, 42 Cal.4th at p. 956.)

---

**9**        "As this court has elaborated with respect to th[e] third requirement (. . . sometimes referred to as the necessity and financial burden requirement):  ' "An award on the 'private attorney general' theory is appropriate when the cost of the claimant's legal victory transcends his personal interest, that is, when the necessity for pursuing the lawsuit placed a burden on the plaintiff 'out of proportion to his individual stake in the matter.' [Citation.]" '  (*Woodland Hills*, *supra*, 23 Cal.3d at p. 941.)"  (*Joshua S.*, *supra*, 42 Cal.4th at p. 952.)

Here, the Court of Appeal majority misapprehended the nature of the *Joshua S.* holding. The majority proceeded on the assumption that *Joshua S.* "established the applicable criteria here for determining under section 1021.5 whether the litigation 'has resulted in the enforcement of an important right affecting the public interest' " (italics omitted), the first of the statutory factors. However, in *Joshua S.* we did not explicate or apply the usual section 1021.5 criteria. The first two factors were unquestionably met. The prior litigation establishing the validity of second parent adoptions involved an important legal issue and "yield[ed] a substantial and widespread public benefit." (*Joshua S.*, *supra*, 42 Cal.4th at p. 952.) While the third factor was in dispute, particularly as to whether the plaintiff's personal interest in vindicating her parental rights disqualified her from recovering her attorney fees, we did not resolve that issue in *Joshua S.*[10] Instead, as described above, we recognized an *exception* to be applied in cases where all three factors are satisfied, but the party from whom fees are sought "is not the type of party on whom private attorney general fees were intended to be imposed." (*Joshua S.*, at p. 953.)

Thus, *Joshua S.* has no bearing on whether an action qualifies as one that "has resulted in the enforcement of an important right affecting the public interest," except insofar as it exemplifies a conceded point. (§ 1021.5.) Nor does the analysis of the Court of Appeal majority below suffice to bring this case within the *Joshua S.* exception. The majority agreed with the trial court's view that the dispute between plaintiffs and Coast was a "private business disagreement," which "did not arise from an attempt to curtail any conduct on the part of Coast that was

---

[10] We decided the "personal interest" question in *Conservatorship of Whitley*, *supra*, 50 Cal.4th 1206.

11

infringing a statutory or public right." These characterizations are insupportable, in view of the facts and law set out in the *Stefan I* opinion.

There was no business relationship between plaintiffs and Coast, which was retained as the deposition reporter by defendant. Plaintiffs had no choice but to get their transcripts from Coast. Coast was a ministerial officer of the court, and its obligations to plaintiffs were determined by statute, not by contract. While the proceedings in the trial court regarding transcript charges might be deemed a minor dispute limited to the circumstances of this litigation, on appeal Coast strenuously defended its institutional interest in controlling the fees charged to a nonnoticing party without judicial oversight. And the trial court determined, on remand after *Stefan I*, that Coast had indeed violated plaintiffs' right to receive a transcript for a reasonable charge. Accordingly, this is not a case in which a "private litigant with no institutional interest in the litigation" pursued "only [its] private rights." (*Joshua S.*, *supra*, 42 Cal.4th at p. 957.) Rather, we are presented with the usual circumstance where private attorney general fees are sought from a party "at least partly responsible for the policy or practice that gave rise to the litigation." (*Connerly v. State Personnel Bd.*, *supra*, 37 Cal.4th at p. 1181; see *Joshua S.*, *supra*, 42 Cal.4th at p. 957.)[11]

---

[11] Coast's status as a ministerial officer of the court, and the absence of an arm's-length business relationship between Coast and plaintiffs' counsel, are central to our conclusion that this case does not fit the *Joshua S.* scenario, where a party seeks to vindicate only private rights and does nothing to affect the public interest other than litigating a case that results in an important appellate precedent. We do not suggest, however, that the existence of a private business relationship necessarily places a party within the scope of the *Joshua S.* exception. While most private attorney general fee cases involve public or quasi-public agencies whose actions have impaired the public interest (see *Joshua S.*, *supra*, 42 Cal.4th at p. 955, fn. 9), private business practices that damage important public rights may also justify a fee award under section 1021.5 (see, e.g., *Hewlett v. Squaw Valley*

*(footnote continued on next page)*

The Court of Appeal majority also went astray when it determined that *Stefan I* "was not public interest litigation for purposes of section 1021.5 as explicated by *Joshua S.*" (italics omitted), reasoning that *Stefan I* "did not create new law or extend existing law . . . [but] merely reiterated the state of statutory authority . . . which empowers trial courts to regulate deposition fees. Nor did our opinion pronounce a new principle. Trial courts have long had the inherent power generally to control the conduct of ministerial officers and others connected with judicial proceedings. . . . The trial court in [*Stefan I*] misunderstood its power and believed itself constrained by *Urban Pacific* [], *supra*, 59 Cal.App.4th 688. [*Stefan I*] gave guidance by disagreeing with *Urban* [*Pacific*] and explicating the court's power. Therefore, we merely corrected a garden-variety error by a trial court that had mistakenly believed it lacked the authority to limit court reporter fees, with the result that [*Stefan I*] did not enforce a fundamental public right or constitutional principle that was being infringed by Coast."

*Joshua S.* did not speak to these concerns. There, as noted above, the public importance of the underlying litigation was undisputed. Furthermore, the majority's interpretation of the *Stefan I* opinion is unduly cramped. The statutes governing depositions were unclear on the expenses chargeable to a nonnoticing party, and silent on the courts' authority to intervene. Section 2025.510, subdivision (c) offered no guidance on the amount of the "expense" a nonnoticing party may be charged, and section 2025.570, subdivision (a), governing transcript requests by nonparties, referred to "a reasonable charge set by the deposition

---

*(footnote continued from previous page)*

*Ski Corp.* (1997) 54 Cal.App.4th 499, 543-545; *Beasley v. Wells Fargo Bank* (1991) 235 Cal.App.3d 1407, 1417-1418).

officer." The *Urban Pacific* court, albeit in dicta, had viewed the statutory scheme as permitting deposition officers to charge whatever the market would bear. (*Urban Pacific*, *supra*, 59 Cal.App.4th at p. 692.) The trial court's reluctance to review the reasonableness of Coast's deposition fees under this state of the law was understandable.

The *Stefan I* opinion makes it plain that the court was addressing statutory and constitutional rights of considerable public importance. "Depositions play an important role in litigation and trial preparation, and deposition testimony may be offered as evidence in pretrial proceedings and, in some circumstances, at trial." (*Stefan I*, *supra*, 162 Cal.App.4th at p. 1036.) "[C]onditioning the party's right to receive a copy of a transcript on payment of an unreasonable fee would undermine rather than promote the administration of justice and could very well result in a denial of due process to the nonnoticing party victimized by the reporter's conduct." (*Ibid*.) These considerations substantially contributed to the court's conclusion that section 2025.510, subdivision (c) must be construed to include a reasonableness requirement. Similarly, when the court decided that disputes over the reasonableness of a fee should be resolved by the trial court in the pending action, it observed that "[t]o defer the determination to a later, separate proceeding would be impractical and inefficient and would undermine the trial court's necessary authority under section 128, subdivision (a)(5), as well as imperil the due process rights of the nonnoticing party." (*Stefan I*, *supra*, 162 Cal.App.4th at p. 1039.)

Thus, it is clear that issues of public interest were directly involved in the *Stefan I* appeal. The court resolved unsettled issues of statutory interpretation relating to the administration of justice, the trial courts' inherent and statutory authority to supervise their ministerial officers, and the statutory and constitutional rights of nonnoticing parties to obtain deposition transcripts at a reasonable cost.

14

*Stefan I* established the right of all such parties to bring transcript fee disputes to the trial courts for resolution. Coast argues, correctly, that merely because an appellate opinion is certified for publication does not mean it involves an important right affecting the public interest. The fact that litigation results in significant appellate precedent is only one factor to be considered in that regard. (*Joshua S.*, *supra*, 42 Cal.4th at p. 958; *Los Angeles Police Protective League v. City of Los Angeles* (1986) 188 Cal.App.3d 1, 12.) Here, however, the *Stefan I* opinion by its terms addressed matters of public importance.

Coast also asserts that to qualify as public interest litigation, a case must meet the criteria of section 1021.5 in the trial court as well as on appeal. On this point, Coast is wrong. It is well established that an appellate decision may provide the basis for a fee award even when the trial court ruling does not.[12] (*Laurel Heights Improvement Assn. v. Regents of University of California* (1988) 47 Cal.3d 376, 427; *County of San Diego v. Lamb* (1998) 63 Cal.App.4th 845, 852; *Mounger v. Gates* (1987) 193 Cal.App.3d 1248, 1258, fn. 10.) Here, the Court of Appeal majority erred by concluding that *Stefan I* did not resolve an important issue affecting the public interest.

---

[12]    That may be the case here, but we do not reach the question. Our review is limited to the scope of the *Joshua S.* exception, and the correctness of the Court of Appeal's holding that the appeal in *Stefan I* did not satisfy the first element of section 1021.5. We note, however, that the trial court has discretion to restrict a section 1021.5 fee award to an amount reflecting only those efforts by counsel involving issues of public importance. (*Conservatorship of Whitley*, *supra*, 50 Cal.4th at p. 1226.)

DISPOSITION

Because neither the Court of Appeal nor the trial court considered whether plaintiffs satisfied the other elements required for a fee award under section 1021.5, we reverse and remand with directions to the Court of Appeal to instruct the trial court to determine anew whether plaintiffs are entitled to recover private attorney general fees.

**CORRIGAN, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**BAXTER, J.**
**WERDEGAR, J.**
**CHIN, J.**
**LIU, J.**

**DISSENTING OPINION BY KENNARD, J.**


California follows the American rule, under which each party to litigation must generally pay its own attorney fees. (Code Civ. Proc., § 1021.) California's private attorney general law (*id.*, § 1021.5), however, sets forth an exception, stating that, if certain specified conditions are met, "a court may award attorneys' fees . . . in any action which has resulted in the enforcement of an important right affecting the public interest."

Here, *defendant* scheduled the deposition of plaintiffs' expert witness and hired a local deposition reporter to record the deposition and prepare a certified transcript on an expedited basis. After the deposition was completed, *plaintiffs* requested a certified *copy* of the transcript, also on an expedited basis. The reporter's invoice, sent to plaintiffs' counsel, included a $261.56 surcharge for expediting its service. Plaintiffs challenged the surcharge in the trial court. The reporter provided the transcript, agreeing to defer payment of the surcharge until after the trial court's ruling.

Relying on a published Court of Appeal decision, the trial court ruled that it had no authority to regulate the fees charged by deposition reporters. Plaintiffs appealed, and the Court of Appeal held in a published decision that trial courts do have authority to regulate reporter fees. Plaintiffs then sought $50,000 in attorney fees under the private attorney general law, arguing that the litigation against the deposition reporter enforced an important right affecting the public interest and

1

conferred a significant benefit on the general public. In this court, the majority upholds the appropriateness of an attorney fees award. I disagree.

## I.

An adequate understanding of the issue requires a detailed statement of the relevant facts, as summarized below.

The underlying dispute was a personal injury lawsuit that eventually settled. In the course of litigating that dispute, *defendant* hired Coast Court Reporters, Inc. to stenographically record the deposition of plaintiffs' expert witness and to prepare a certified transcript of the deposition on an expedited basis. The deposition was held on Monday, June 26, 2006. Two days later, *plaintiffs'* counsel requested a certified copy of the transcript, also on an expedited basis, using an order form that stated: "Transcripts may be sent C.O.D. [collect on delivery]." In signing the order form, plaintiffs' counsel expressly agreed "to provide payment in full . . . upon request."

The completed transcript was ready on Friday, June 30, four days after the deposition. The transcript was 141 pages, and the exhibits were 28 pages. Coast charged plaintiffs' counsel $373.65 for the certified copy of the transcript ($2.65 per page), $14.00 for the exhibits ($.50 per page), and an "expedite charge" of $261.56 (70 percent of the base charge for the transcript). The total amount billed was less than half the amount that Coast had charged to defendant for the expedited original transcript.

Coast faxed its invoice to plaintiffs' counsel on June 30, the Friday before the Fourth of July weekend,[1] with a notation that Coast would email a copy of the

_____

[1] In 2006, the Fourth of July holiday fell on a Tuesday. It is likely that on the preceding Monday, many businesses were closed or operating with greatly reduced staff, thereby enabling most employees to enjoy a four-day weekend.

transcript when it received a faxed copy of the payment check. Within two hours, plaintiffs' counsel faxed a letter to Coast, objecting to the "expedited charge" and saying, "we [did not] request that the transcript be expedited." Coast responded the same day with a faxed letter stating: "Our normal turnaround on transcripts is ten business days. We are happy to put your certified copy order to the head of the queue and deliver it on an expedited basis, but there is an additional charge . . . associated with this special request. [¶] . . . Please notify me by 5:00 p.m. today as to how you would like to proceed." Coast did not receive any response by 5:00 p.m. and did not email the copy of the transcript. That evening, long after business hours, plaintiffs' counsel responded with a faxed letter notifying Coast that plaintiffs intended to seek the trial court's intervention regarding the "expedited fees."

The Fourth of July weekend followed. At 8:30 a.m. on July 5, 2006, plaintiffs applied ex parte to the trial court for an order requiring Coast to provide the copy of the transcript "without charging any expedited fees." In the accompanying declaration, plaintiffs' counsel admitted that, contrary to the statement in the faxed letter, he *had* asked Coast to expedite preparation of the transcript.

At the hearing on July 5, the trial court continued the matter to July 20, to allow time for briefing. Coast agreed to provide the transcript (and future deposition transcripts) *without payment of its fees*, pending the trial court's resolution of the disputed charge. On July 20, the trial court denied plaintiffs' request to disallow that charge. Citing *Urban Pacific Equities Corp. v. Superior Court* (1997) 59 Cal.App.4th 688 (*Urban Pacific*), the trial court concluded that it had no power to reduce the reporter's fee. In *Urban Pacific*, the Court of Appeal said: "[T]here is no statute regulating the fees charged by private reporting firms, and *deposition reporters are free to charge all the market will bear*." (*Id.* at

3

pp. 691-692, italics added.)  Relying on that statement, the trial court here ordered plaintiffs to pay in full Coast's charge.  Plaintiffs did so, then appealed.

Expressly disagreeing with the statement quoted above from *Urban Pacific*, *supra*, 59 Cal.App.4th at pages 691-692, the Court of Appeal in this case concluded that the trial court had erred.  (*Serrano v. Stefan Merli Plastering Co., Inc.* (2008) 162 Cal.App.4th 1014, 1037-1038 (*Stefan Merli I*).)  Noting that deposition reporters are ministerial officers of the court (*id.* at p. 1035), the Court of Appeal held that the trial court, as part of its authority to control the conduct of its ministerial officers (Code Civ. Proc., § 128, subd. (a)(5)),[2] had authority to regulate the charges of a deposition reporter (*Stefan Merli I*, at pp. 1038-1039).

On remand, the trial court determined that Coast's fee to plaintiffs for expediting the certified copy of the transcript was unreasonable, and it ordered Coast to return to plaintiffs, with interest, the amount paid.  The court explained: "I'm not here to regulate an industry.  I'm just concerned with this case and the expedited charges.  And the Court of Appeal said [Coast is] not entitled to an expedited cost."  Coast did not appeal the trial court's decision, which concerned only a small sum.

Having prevailed regarding the $261.56 surcharge, plaintiffs then asked the trial court for an award of $50,000 in attorney fees under the private attorney general provision set forth in section 1021.5.  Plaintiffs argued that their action against Coast had conferred a significant benefit on the general public by culminating in a published Court of Appeal decision (*Stefan Merli I*, *supra*, 162 Cal.App.4th 1014) establishing the authority of trial courts to regulate deposition reporter fees.

---

[2]     All further statutory references are to the Code of Civil Procedure.

4

In denying plaintiffs' request for attorney fees, the trial court relied on this court's statement in *Adoption of Joshua S.* (2008) 42 Cal.4th 945, 949 (*Joshua S.*), that "section 1021.5 does not authorize an award of attorney fees against an individual who has done nothing to adversely affect the rights of the public or a substantial class of people other than raise an issue in the course of private litigation that could establish legal precedent adverse to a portion of the public . . . ." Plaintiffs appealed, and in a two-to-one decision, the Court of Appeal affirmed. Today, a majority of this court reverses that decision.

**II.**

As noted earlier, under California's private attorney general law (§ 1021.5), "a court may award attorneys' fees . . . in any action which has resulted in the enforcement of an important right affecting the public interest," provided certain specified conditions are met.[3] In holding that plaintiffs here are entitled to such attorney fees, the majority distinguishes *Joshua S.*, *supra*, 42 Cal.4th 945, saying: "[O]n appeal Coast strenuously defended its institutional interest in controlling the fees charged to a nonnoticing party without judicial oversight. And the trial court determined . . . that Coast had indeed violated plaintiffs' right to receive a transcript for a reasonable charge. Accordingly, . . . we are presented with the usual circumstance where private attorney general fees are sought from a party 'at least partly responsible for the policy or practice that gave rise to the litigation.' "

---

**3**     Section 1021.5 provides in relevant part: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement . . . are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."

5

(Maj. opn., *ante*, at p. 12, quoting *Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169, 1181.)

I disagree with the majority's holding. This court's decision in *Joshua S.*, *supra*, 42 Cal.4th 945, is directly on point.

The underlying issue in *Joshua S.*, *supra*, 42 Cal.4th 945, was a second-parent adoption by a former domestic partner of the birth parent. (Second-parent adoption is a form of adoption in which the birth parent does not give up parental rights.) The first stage of the *Joshua S.* litigation culminated, under a different name, in an important decision of this court — *Sharon S. v. Superior Court* (2003) 31 Cal.4th 417 — recognizing the validity of a particular category of second-parent adoption, namely, adoption by a person *not married* to the birth parent.

After the decision in *Sharon S. v. Superior Court*, *supra*, 31 Cal.4th 417, the adopting parent sought private attorney general fees under section 1021.5. This court held that an award of attorney fees was *not* authorized. It explained that, although the statutory requirements of section 1021.5 were otherwise satisfied, "section 1021.5 was not intended to impose fees on an individual seeking a judgment that only determines his or her private rights, but who has done nothing to adversely affect the public interest other than being on the losing side of an important appellate case." (*Joshua S.*, *supra*, 42 Cal.4th at p. 958.)

Pointing to section 1021.5's requirement that the action must have "resulted in the enforcement of an important right affecting the public interest," *Joshua S.* concluded that the word "enforcement" implies that the losing party did something adverse to the interest of the general public. (*Joshua S.*, *supra*, 42 Cal.4th at pp. 955-956.) In support, the decision looked to the legislative history of section 1021.5 and observed: "[T]he Legislature was focused on public interest litigation in the conventional sense: litigation designed to promote the public interest by enforcing laws that a governmental or private entity was violating, rather than

6

private litigation that happened to establish an important precedent." (*Joshua S.*, *supra*, 42 Cal.4th at p. 956.) *Joshua S.* held that "attorney fees should not be imposed on . . . an individual who has only engaged in litigation to adjudicate private rights from which important appellate precedent happens to emerge, *but has otherwise done nothing to compromise the rights of the public or a significant class of people*." (*Id.* at p. 954, italics added.)

Like the birth mother in *Joshua S.*, *supra*, 42 Cal.4th 945, here Coast did nothing "to compromise the rights of the public or a significant class of people." First, because plaintiffs have made no showing that Coast was a large company with a significant share of the market for deposition-reporting services, it is reasonable to infer that Coast is a small, local business whose charges to its customers do not affect the rights of the public or a significant class of people.

Second, Coast was not responsible for the Court of Appeal's statement in *Urban Pacific*, *supra*, 59 Cal.App.4th at pages 691-692, that deposition reporters are free to set their fees without trial court intervention. Because that appellate decision was the only case law on point at the time, Coast reasonably relied on it in the trial court.

Third, even under the Court of Appeal's holding in *Stefan Merli I*, *supra*, 162 Cal.App.4th at pages 1037-1038, that a trial court has authority to determine the reasonableness of a deposition reporter's charges (see p. 4, *ante*), it is not clear that Coast ever charged an unreasonable fee to any of its customers, including plaintiffs. The trial court did not exercise any discretion in finding Coast's fee to be unreasonable. Instead, the court told Coast's attorney: "[T]he Court of Appeal said you're not entitled to an expedited cost," noting the Court of Appeal's statement that "a reasonable fee for a copy of the transcript would not include any amount that compensates the deposition reporter for the cost to expedite the *transcription*." (*Stefan Merli I*, *supra*, 162 Cal.App.4th at p. 1038, italics added.)

The trial court, however, misquoted that statement, inserting the word "transcript" in place of the word "transcription." The word "transcription" in the *Stefan Merli I* decision (*ibid.*) referred narrowly to the process of transcribing stenographic notations into a fully written-out text, a process that must, by law, be charged to the party that noticed the deposition. (See § 2025.510, subd. (b).) But *Stefan Merli I* made clear that *other tasks* associated with preparing a certified copy of a transcript can be charged to the nonnoticing party. (*Stefan Merli I*, at p. 1038.)

If the trial court here had not misread the Court of Appeal's opinion, it might have found Coast's fee to be reasonable.[4] Coast produced for plaintiffs the certified copy of the transcript in four days instead of the usual 10, and its total charge was less than half of what it had charged defendant for the original. Plaintiffs made no evidentiary showing that Coast's $261.56 surcharge for greatly expediting its service was unreasonable, while Coast presented evidence that the surcharge was appropriate. Under those circumstances, plaintiffs cannot be credited with "enforcing laws that a . . . private entity was violating." (*Joshua S.*, *supra*, 42 Cal.4th at p. 956.) Instead, this case like *Joshua S.* falls squarely in the category of "private litigation that happened to establish an important precedent." (*Ibid.*)

As in *Joshua S.*, *supra*, 42 Cal.4th 945, a private party litigated a private right (here, the right of deposition reporters to set fees without judicial oversight, as set forth in *Urban Pacific*, *supra*, 59 Cal.App.4th at pp. 691-692), and lost on

---

[4] Coast's decision not to appeal the trial court's decision in a matter involving only a few hundred dollars cannot be construed as a concession, for purposes of the attorney fees issue, that it acted unreasonably. (See, e.g., *Parklane Hosiery Co. v. Shore* (1979) 439 U.S. 322, 330.)

appeal. As in *Joshua S.*, the Court of Appeal decision established a precedent that benefitted the general public (here, by ensuring judicial oversight of deposition reporter fees). And as in *Joshua S.*, the losing party in the underlying dispute (here, Coast) was not responsible for the policy that the Court of Appeal rejected (here, the statement in *Urban Pacific*, *supra*, 59 Cal.App.4th at p. 692, that "deposition reporters are free to charge all the market will bear").

The majority asserts that Coast "strenuously" pursued its "institutional interest" (maj. opn., *ante*, at p. 12), relying on language in *Joshua S.*, *supra*, 42 Cal.4th at page 957, that there the attorney fees award was *not* appropriate because the losing party in the adoption dispute was a private litigant "with no institutional interest in the litigation." But that comment in *Joshua S.* does not mean the converse, namely, that an award of private attorney general fees is appropriate no matter how small or minimal the institutional interest in the litigation. If here Coast's ongoing business interest in the outcome of the litigation suffices to make it liable for attorney fees, then any party with a recurring interest in a matter is subject to an attorney fees award whenever that party loses on appeal in a published decision.

It is true that, as a deposition reporter, Coast was a ministerial officer of the court, with duties owed to the court and the public, in addition to its own private interests. (Maj. opn., *ante*, at pp. 2, 12, 14.) The transcripts that deposition reporters prepare are often critical to litigation involving millions (or billions) of dollars. That fact potentially gives the deposition reporter an unfair advantage when setting fees. The party that notices the deposition can negotiate a fair fee (or choose another deposition reporter if the fees demanded are too high), but once the noticing party has selected a deposition reporter and the deposition is completed, other parties have little choice other than to pay whatever fee that deposition reporter charges for copies of the transcript. Thus, some risk exists that a

9

deposition reporter may inflate its charge for certified copies and discount its charge for the original, and in that way attract business. (See *Saunders v. Superior Court* (1994) 27 Cal.App.4th 832, 840-841.) Here, however, Coast's charge to plaintiffs for the certified copy of the deposition transcript was less than half of its charge for the original requested by defendant (see p. 2, *ante*), and therefore it does not appear as a matter of law that Coast charged plaintiffs an unreasonable fee for expediting the certified copy.

Moreover, Coast did not otherwise breach its duty as an officer of the court. When plaintiffs challenged in the trial court Coast's charge for expediting the deposition transcript, Coast did not withhold the transcript. Instead, Coast provided the expedited transcript to plaintiffs without payment, agreeing to submit the dispute over its charge to the trial court. Plaintiffs were only deprived of the transcript during the four-day Fourth of July weekend, and then only because on the Friday before the weekend, plaintiffs' counsel told Coast "we [did not] request that the transcript be expedited," thus implying that Coast's normal 10-day delivery time would be acceptable. Plaintiffs could have received earlier delivery of the transcript had they paid the disputed charge, reserving the right to litigate the reasonableness of the charge.

For the reasons set forth above, I would affirm the judgment of the Court of Appeal.


KENNARD, J.


10

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Serrano v. Stefan Merli Plastering Company, Inc.

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 184 Cal.App.4th 178
**Rehearing Granted**

_____

**Opinion No.** S183372
**Date Filed:** October 31, 2011

_____

**Court:** Superior
**County:** Los Angeles
**Judge:** Aurelio Munoz

_____

**Counsel:**

Law Offices of David B. Bloom, Stephen Monroe, Edward Idell and James Adler for Plaintiffs and Appellants.

John L. Dodd & Associates, John L. Dodd; Chambers, Noronha & Kubota and Peter A. Noronha for Objector and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Stephen Monroe
Law Offices of David B. Bloom
3699 Wilshire Boulevard, Tenth Floor
Los Angeles, CA  90010
(213) 384-4088

John L. Dodd
John L. Dodd & Associates
17621 Irvine Boulevard, Suite 200
Tustin, CA  92680
(714) 731-5572