Filed 10/20/20 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA


FIRST APPELLATE DISTRICT


DIVISION ONE


| | |
|---|---|
| RICHARD SKAFF,<br><br>　　　Plaintiff and Appellant,<br><br>v.<br><br>RIO NIDO ROADHOUSE,<br><br>　　　Defendant and Appellant. | A152462, A153606<br><br>(Sonoma County<br>Super. Ct. No. SCV-254094)<br><br>ORDER MODIFYING OPINION<br>[NO CHANGE IN JUDGMENT] |

BY THE COURT:

It is ordered that the published opinion filed herein on October 5, 2020, be modified as follows:

On page 5, second paragraph, at the end of the second sentence, the words "and entrance" should not be bolded.

On page 15, in the second paragraph under section II of the Discussion, third sentence, the word "successful" is added between the words "Plaintiff's" and "injunction," so that the sentence reads: "Plaintiff's successful injunctive relief claim, however, was premised on violation of section 19955, not the ADA."

This modification does not change the judgment.

The petition for rehearing is denied.

Dated: _____

Humes, P.J.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| RICHARD SKAFF,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>RIO NIDO ROADHOUSE,<br><br>    Defendant and Appellant. | A152462, A153606<br><br>(Sonoma County<br>Super. Ct. No. SCV-254094) |

Plaintiff Richard Skaff sued a restaurant and bar establishment called the Rio Nido Roadhouse (Roadhouse), doing business as Lowbrau, LLC (Lowbrau), alleging that the Roadhouse and an adjoining parking lot were inaccessible to wheelchair users. Plaintiff asserted two causes of action, one under Health and Safety Code[1] section 19955 et seq., and the second under the Unruh Civil Rights Act (Civ. Code, § 51 et seq. (Unruh Act)). Under section 19955, public accommodations like the Roadhouse must comply with California Building Code disability access standards if repairs and alterations were made to an existing facility that trigger accessibility

---

[1] Unless otherwise indicated, all further statutory references are to the Health and Safety Code.

1

mandates.  No evidence was adduced at trial that Lowbrau had undertaken any triggering alterations at the Roadhouse which required compliance with section 19955.

Lowbrau did, however, voluntarily remediate the barriers to access previously identified by plaintiff.  The trial court entered judgment against plaintiff on his Unruh Act cause of action but ruled in his favor on the section 19955 claim.  The court reasoned that plaintiff was the prevailing party under a "catalyst theory" (see *Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553 (*Graham*)), because his lawsuit was the catalyst that caused the renovations at the Roadhouse.  Plaintiff was awarded $242,672 in attorney fees and costs.  Lowbrau appeals from the judgment and the post-judgment order awarding attorney fees and costs.  Plaintiff  also appeals, contending the court erred in failing to award all of his requested fees.

We reverse the judgment and fee award.  It is axiomatic that plaintiff cannot prevail on a cause of action in which no violation of law was ever demonstrated or found.  Nor is the catalyst theory available when a claim lacks legal merit.  That a prelitigation demand may have spurred action that resulted in positive societal benefit is not reason alone to award attorney fees under the Civil Code.

**FACTUAL AND PROCEDURAL BACKGROUND**

## I.    Background

### A.  The Roadhouse

The Roadhouse is a restaurant and bar located near Guerneville in Sonoma County.  The site includes an outdoor event space and swimming pool.  Brad Metzger is the current owner and operator of the Roadhouse.  He and his former business partner formed Lowbrau and purchased the property

2

in 2007. Shortly after purchasing the Roadhouse they decided to upgrade the kitchen.

In October 2007, the Sonoma County Permit and Resource Management Department approved a building permit for the kitchen, conditioned on the performance of certain disability access upgrades. Lowbrau requested a hardship exception for these upgrades and submitted plans to the County that included installing a designated accessible parking space on the south-facing parking lot (the South Lot), repairing the slope of the existing wheelchair ramp, and remodeling the restrooms to make them wheelchair accessible. Lowbrau completed the kitchen remodel but postponed work on the access upgrades.

Lowbrau has never owned the South Lot. At times it leased the lot for patron parking and it made several unsuccessful attempts to purchase the South Lot over the years. The disabled parking spaces referenced in the 2007 building permit were never installed. A small asphalt lot on the north side of the Roadhouse was made available for public parking in December 2014, shortly after the South Lot was chained off by its owner. Lowbrau reached a settlement with the South Lot's owner allowing it to construct two disabled parking spaces on the east side of the Roadhouse after it obtained an encroachment permit from the County.

### B. Plaintiff's Visit to the Roadhouse

Plaintiff became disabled in 1978 as a result of an accident and requires the use of a wheelchair. On the evening of October 18, 2012, plaintiff tried to patronize the Roadhouse. He drove a full-sized van with a wheelchair lift that required an eight-foot clearance. As he approached the establishment, he saw that several cars were already parked there. The Roadhouse was very busy that evening due to simultaneously televised San

3

Francisco 49ers and San Francisco Giants games. He turned into the South Lot looking for an accessible parking space. He saw a disabled parking sign but the space was occupied. A disabled veteran had already parked in the designated space.

Plaintiff could not find an available parking spot in the South Lot large enough to accommodate his van with clearance for the lift, and he could not see a wheelchair-accessible way to enter the Roadhouse from the South Lot. He drove away and did not attempt to enter the bar. When he got home, he called the Roadhouse and explained that he was disabled and had experienced difficulty entering the facility.[2] Metzger returned his call, and after some discussion, told plaintiff to contact the County with his concerns.

## C. *Events Leading to Litigation*

Shortly after plaintiff's visit, Metzger retained Fred Lustenberger, a certified accessibility specialist. Lustenberger inspected the Roadhouse in December 2012 and found several accessibility issues. There were no marked parking spaces in the South Lot, wheelchair or otherwise. An existing wheelchair ramp on the south side of the facility had slopes measuring between 5.2 and 9.2 percent and lacked required handrails. The ramp's landings had slopes exceeding 2 percent in any direction, and the gate at the top of the ramp lacked kick plates. The entrance landings and walking paths had slopes exceeding 2 percent, and the public restrooms were not wheelchair accessible.

---

[2] Plaintiff had been the chief building inspector for the City of San Francisco, responsible for enforcement of California accessibility laws, and was later the Americans with Disabilities Act coordinator for the City's Department of Public Works. He has had significant experience working with businesses to improve wheelchair access.

Over the next several months, plaintiff's lawyers sent Metzger several letters demanding remediation of various access concerns, including those identified by Lustenberger. Metzger responded that he had hired an accessibility specialist and would remediate certain access barriers. On June 26, 2013, plaintiff sent Metzger a settlement agreement providing for a six-month period to bring the Roadhouse into compliance with state and federal accessibility requirements, and indicated that if settlement could not be reached he would initiate litigation. Dissatisfied with Metzger's response, plaintiff filed his complaint in August 2013.

The first cause of action alleged that the Roadhouse was in violation of section 19955 because it had undergone alterations to an existing facility that triggered California Building Code disability access requirements. The second cause of action under the Unruh Act alleged violation of the Americans with Disabilities Act (42 U.S.C §§ 12181-12189) (ADA) based upon plaintiff's inability to patronize the Roadhouse because of access barriers in the South Lot **and entrance**. Plaintiff sought damages, injunctive relief, and attorney fees and costs. Lowbrau filed a cross-complaint against plaintiff for attempted extortion and unfair business practices under Business and Professions Code section 17200.

## II. Trial

### A. *Expert Witness Testimony*

The matter was conducted over a 12-day bench trial in January and February 2017. Both sides offered expert witness testimony describing federal and state disability standards. The experts agreed that three standards are relevant in determining whether a public accommodation has complied with federal and state accessibility laws: new construction standards, alteration standards, and barrier removal standards. The first

5

two standards are found in both state and federal law. New construction standards apply to buildings or facilities constructed for first occupancy. The alteration standards pertain to modifications made to existing facilities, though not every alteration will trigger the duty to make access upgrades. The barrier removal standard is required only under the ADA. The ADA creates an ongoing obligation for buildings constructed before 1991 to remediate architectural barriers when it is "readily achievable" to do so, a standard that is applied on a case-by-case basis. (42 U.S.C., § 12182(b)(2)(A)(iv).)

Plaintiff's disability access expert witness Karl Danz visited the Roadhouse in August 2014 and prepared a report detailing various access deficiencies he had observed. Danz was directed by plaintiff's counsel to evaluate the Roadhouse under the new construction standard only; his evaluation did not consider the alteration standard or the ADA barrier removal standard. Danz did not review the construction history of the Roadhouse nor was he provided any building records or permits showing that the facility had undergone any alterations or additions since 1970.

In his inspection, Danz found that the Roadhouse was not wheelchair accessible. Among other things, the disabled parking spot in the South Lot did not comply with current state or federal disability requirements. An accessible space must be on a hard surface, must be striped and marked, and must connect to an accessible route. And while a disability access sign had been placed near an existing ramp leading from the parking area to the pool area, the gate at the end of the ramp was closed. The main entrance was accessed by stairs, and there were no signs indicating an access route for people in wheelchairs.

6

Danz returned to the Roadhouse in September 2014 and observed four access remediation projects underway: a concrete parking pad on the east side of the facility, a new wheelchair ramp, a bathroom access modification, and elevation of a dining table to provide sufficient clearance. When he conducted a follow-up inspection in August 2016, virtually all of the access concerns he previously observed had been remediated to current state and federal standards. Lowbrau spent $27,853 to complete these access upgrades.

Lowbrau's disability access expert, Kim Robert Blackseth, also prepared a report on the Roadhouse. He testified that it is important to research a property's construction history and building permit history to determine which access standards apply in a given case. Blackseth testified that in October 2012, the access remediation required at the Roadhouse would have been limited to the readily achievable barrier removal standard under the ADA. The alteration standard did not apply because no alteration-triggering permits had been issued. And while the Roadhouse's 2007 building permit for the kitchen remodel did require some ADA upgrades, the remodel itself was not a triggering alteration. A 2014 permit to construct wheelchair accessible restrooms also did not trigger any other access upgrades.

In Blackseth's opinion, Danz's report and testimony revealed a notable lack of understanding about the access standards and how to analyze them. Significantly, Danz did not identify the construction or alteration history of the Roadhouse. Instead, he evaluated the Roadhouse under the standards that apply to new construction only. New construction standards have no application to existing facilities, nor do they govern a facility's ongoing

7

obligation to remove existing barriers. Danz's report was therefore unreliable and confusing.

Blackseth's conclusions regarding the absence of triggering alterations were essentially undisputed. Following his testimony, plaintiff's counsel stated, "I think we've all agreed there are no alterations that triggered in this particular case," conceding, "We established no alteration, no triggers in this particular case."

## B. Lowbrau's Request to Dismiss the Section 19955 Claim

At the close of plaintiff's case, Lowbrau orally requested that plaintiff's injunctive relief claim be dismissed because there was no dispute that all the identified barriers to access at the Roadhouse had been remediated before the start of trial. Plaintiff's counsel acknowledged his client was not seeking any further repairs. But he stressed that plaintiff had identified many barriers to access, all of which were remediated as a result of his advocacy. Counsel argued that dismissal would preclude plaintiff's argument that he would be entitled to attorney fees as the prevailing party. The court denied Lowbrau's motion, stating: "Well, at this point I'm not going to invite myself into some sort of appellate issue on the issue of attorney's fees, so I'm going to deny the motion at this point."

## C. Closing Arguments

During closing arguments, plaintiff's counsel withdrew the request for injunctive relief. She argued: "The cause of action under Health and Safety Code 19955 would have entitled him to obtain injunctive relief for all barriers to access at the Rio Nido Roadhouse related to his disability. [¶] As has been testified to by both sides' experts, all barriers to access at the Roadhouse identified by plaintiff's experts have since this case started been remediated. [¶] Accordingly, plaintiff seeks no injunctive relief from this Court because

8

he has already obtained all of the injunctive relief he sought in his complaint. All of the work has been done to make the Roadhouse compliant and accessible to people with disabilities." Counsel contended that plaintiff had prevailed on his Unruh Act claim and was therefore entitled to statutory damages of $4,000 under Civil Code section 52, subdivision (a).

## III. Judgment

In June 2017, the trial court entered judgment for plaintiff on his section 19955 claim. In its statement of decision, the court did not expressly find that the Roadhouse was in violation of section 19955, but it declared that plaintiff's section 19955 claim "would have entitled him to obtain injunctive relief for all non-compliant conditions at the Rio Nido Roadhouse relative to his disability." The court observed that since all the barriers to wheelchair access identified in his complaint had been remediated, plaintiff "ha[d] already obtained all the injunctive relief he sought in his prelitigation correspondences and in his complaint." The court therefore ruled that plaintiff was entitled to recover his statutory costs as the prevailing party under Code of Civil Procedure section 1032. Plaintiff was also authorized to file a motion for attorney fees.

The trial court ruled against plaintiff on his Unruh Act claim. It found that Lowbrau was not required to remediate any access barriers in the South Lot because the evidence was undisputed that Lowbrau did not own, control, operate, or lease the South Lot on the date of the alleged violation. The court further found that plaintiff had not encountered a structural barrier within the meaning of the ADA. He had instead encountered a full parking lot, one which Lowbrau had no ability or legal obligation to improve. To the extent plaintiff's Unruh Act claim related to "other aspects of the Roadhouse's alleged non-compliance with the ADA, i.e., signage, ramps, etc," the court

9

found "it is undisputed that plaintiff never physically encountered those barriers." The court accordingly entered judgment for Lowbrau on his Unruh Act claim.

The court ruled against Lowbrau on its cross-complaint for attempted extortion and unfair business practices. Lowbrau has not appealed this part of the judgement.

## IV.    Postjudgment Rulings

In July 2017, Lowbrau filed a motion to vacate the judgment and a motion for new trial. Lowbrau argued it had prevailed on both causes of action because section 19955 applies only to new construction or triggering alterations, neither of which applied to the Roadhouse. Both motions were denied.

In December 2017, the trial court granted in part plaintiff's request for attorney fees under Civil Code section 55. Plaintiff was awarded $192,910 in attorney fees and $39,762.50 in costs. These appeals followed.

## DISCUSSION

Lowbrau contends in its appeal that the trial court erred in entering judgment and awarding attorney fees and costs to plaintiff because he failed to prove any entitlement to relief under section 19955. We agree.

"A request for an award of attorney fees is entrusted to the trial court's discretion and will not be overturned in the absence of a manifest abuse of discretion, a prejudicial error of law, or necessary findings not supported by substantial evidence." (*Yield Dynamics, Inc. v. TEA Systems Corp.* (2007) 154 Cal.App.4th 547, 577; see *Serrano v. Stefan Merli Plastering Co., Inc.* (2011) 52 Cal.4th 1018, 1025–1026.) We must review the entire record, paying particular attention to the trial court's stated reasons in denying or awarding attorney fees and whether it applied the proper standards of law in

10

reaching its decision.  (*Bouvia v. County of Los Angeles* (1987) 195 Cal.App.3d 1075, 1081–1082.)

## I.    State and Federal Access Requirements

"Congress and the Legislature have afforded persons with disabilities a range of legal tools for remedying denials of access.  The ADA and numerous state statutes each prohibit access discrimination on the basis of disability, but they vary in the remedies they provide."  (*Jankey v. Lee* (2012) 55 Cal.4th 1038, 1043–1044 (*Jankey*).)  To properly analyze the parties' arguments, we begin by summarizing the federal and state laws that govern disability access requirements for public accommodations.

### *Americans With Disabilities Act*

The ADA, enacted in 1990, "prohibits discrimination on the basis of disability in the enjoyment of public accommodations, including with respect to access.  [Citation]  . . .  Liability does not depend on proof of intentional discrimination, but a private litigant cannot obtain damages for the denial of access, only injunctive relief."  (*Jankey, supra,* 55 Cal.4th at p. 1044; 42 U.S.C. § 12182(a).)  The ADA Accessibility Guidelines (ADAAGs) set forth standards for new construction and qualifying alterations.  (28 C.F.R. § 36.406.)  A qualifying alteration is defined as "a change to a place of public accommodation . . . that affects or could affect the usability of the building or facility or any part thereof."  (*Id.*, § 36.402(b).)

The ADA further requires that existing places of accommodation remove architectural barriers when it is readily achievable to do so, i.e., easily accomplishable and able to be carried out without much difficulty or expense.  (28 C.F.R. § 36.304.)  Any element in a facility that does not meet the standards set forth in the ADAAGs is considered a barrier to access.  (*Chapman v. Pier 1 Imports (U.S.), Inc.* (9th Cir. 2011) 631 F.3d 939, 945.)

11

The United States Supreme Court has held that the exception for "difficulty" is not limited to the cost of requested modifications. Rather, the "readily achievable" determination also takes into account " 'the impact . . . upon the operation of the facility.' " (*Spector v. Norwegian Cruise Line Ltd.* (2005) 545 U.S. 119, 135, quoting 42 U.S.C. § 12181(9)(B)).

***Unruh Act***

The Unruh Act broadly enjoins arbitrary discrimination in public accommodations and includes disability as a prohibited form of discrimination. (Civ. Code, § 51, subd. (b).) In 1992, the Legislature amended the Unruh Act to specify that "[a] violation of the right of any individual under the Americans with Disabilities Act of 1990 (Public Law 101–336) shall also constitute a violation of this section." (Stats.1992, ch. 913, § 3, p. 4284, adding Civ. Code, § 51, subd. (f); see *Munson v. Del Taco, Inc.* (2009) 46 Cal.4th 661, 668–669 (*Munson*).) The amendment was intended to allow persons injured by a violation of the ADA to seek the full range of remedies provided under the Unruh Act, including injunctive relief, actual damages (in some cases treble damages), and a minimum statutory award of $4,000 per violation. (Civ. Code, § 52, subds. (a), (c)(3); *Munson*, *supra*, 46 Cal.4th at p. 689; see *Turner v. Association of American Medical Colleges* (2011) 193 Cal.App.4th 1047, 1058.)

***Disabled Persons Act***

The Disabled Persons Act (Civ. Code, § 54 et seq.) (DPA) substantially overlaps with and complements the Unruh Act. (*Munson, supra,* 46 Cal.4th at p. 675.) The DPA generally guarantees disabled individuals equal rights of access to public places, buildings, facilities and services, as well as common carriers, housing and places of public accommodation. (Civ. Code, §§ 54, subd. (a), 54.1, subd. (a)(1).) As with the Unruh Act, violations of the ADA

12

may be asserted under the DPA.  (Civ. Code, §§ 54, subd. (c), 54.1, subd. (d); *Munson,* at p. 674; *Wilson v. Murillo* (2008) 163 Cal.App.4th 1124, 1131.) Plaintiff did not assert any claim under the DPA.

### *Health & Safety Code Section 19955*

In 1968, the Legislature required that all government-funded buildings, structures, sidewalks, curbs and related facilities be accessible to persons with disabilities.  (Gov. Code, § 4450 et seq.; Stats. 1968, ch. 261, § 1, p. 573.)  The following year, the Legislature enacted section 19955 et seq., requiring public accommodations newly constructed in this state with private funds to also adhere to the Government Code accessibility requirements. (§ 19955 et seq.; Stats. 1969, ch. 1560, §§ 1, 2, pp. 3166, 3167.)  In 1971, the Legislature added the requirement that preexisting structures must conform to accessibility standards when qualifying alterations, structural repairs, or additions are made.  (Gov. Code, § 4456 et seq.; Stats. 1971, ch. 1458, §§ 1, 2, p. 2874.)  Section 19955 applies "only with respect to buildings constructed after July 1, 1970, or to the repair and alteration of existing facilities after that date."  (*Donald v. Sacramento Valley Bank* (1989) 209 Cal.App.3d 1183, 1192–1193.)

Section 19955 "establishes specific standards of compliance in the State Building Standards Code" for public accommodations.  (*Donald v. Cafe Royale, Inc.* (1990) 218 Cal.App.3d 168, 178.)  Similar to the ADAAGs, the California Building Code, which is a part of the compiled State Building Standards Code, contains California's "requirements for accessibility to sites, facilities, buildings, and elements by individuals with disabilities."  (Cal. Code Regs., tit. 24, § 11B-101.1)  These requirements expressly apply to "[a]ll areas of newly designed and newly constructed buildings and facilities and altered portions of existing buildings and facilities . . . ."  (*Id.,* § 201.1.)

13

Importantly, section 19955 *does not* contain an ongoing obligation for existing facilities to remediate barriers to access. In contrast to the ADA, public accommodations under section 19955 are required to make access upgrades only upon the construction of new facilities or in the repair or alteration of existing facilities, and only then to the area being repaired or altered. (*Marsh v. Edwards Theatres Circuit, Inc.* (1976) 64 Cal.App.3d 881, 888 (*Marsh*), superseded by statute on another ground, see *Hankins v. El Torito Restaurants, Inc.* (1998) 63 Cal.App.4th 510, 521; § 19959.)[3] As both expert witnesses acknowledged in the trial below, not every alteration will trigger state access regulations. For example, changes to mechanical and electrical systems are not considered alterations for purposes of the California Building Code unless they "affect the usability of the building or facility." (Cal. Code Regs., tit. 24, § 11B-202.4)

Several courts have addressed the limited scope of section 19955. In *Marsh,* a quadriplegic plaintiff filed a disability discrimination suit against a theater that contained no accommodations for persons in wheelchairs. The theater in question had been constructed in 1968 in conformity with then applicable building codes and had not undergone later repairs or alterations that would have mandated compliance with post-construction standards. (*Marsh, supra,* 64 Cal.App.3d 881 at pp. 884, 886). The *Marsh* court concluded there was no actionable discrimination because section 19955

---

[3] Section 19959 provides in relevant part: "Every existing public accommodation constructed prior to July 1, 1970 . . . shall be subject to the requirements of this chapter when any alterations, structural repairs or additions are made to such public accommodation. This requirement shall only apply to the area of specific alteration, structural repair or addition and shall not be construed to mean that the entire building or facility is subject to this chapter."

evidences a clear legislative intent "that affirmative conduct [by the building owner] is required only when directed by those sections dealing with construction of new facilities or with the repair and alteration of existing facilities." (*Marsh*, at p. 888.)

In contrast, "under the ADA, the duty to remove . . . barriers from public accommodations now extends beyond initial construction and significant alterations of existing structures." (*Madden v. Del Taco, Inc.* (2007) 150 Cal.App.4th 294, 302.) In *Madden,* the Court of Appeal held that a restaurant was required to remove a structural barrier, a cement trash container blocking an accessible route of travel to an entrance, under the ADA requirement that architectural barriers be removed when it is readily achievable to do so. (*Madden*, at pp. 302–303.) This federal obligation existed even as the restaurant maintained compliance with state access standards and had not engaged in any triggering alterations. (*Id.* at p. 302.)

## II. No Evidence Supports the Entry of Judgment As to Plaintiff's Section 19955 Claim

The trial court found that plaintiff's claim under section 19955 "would have entitled him to obtain injunctive relief for all non-compliant conditions at the Rio Nido Roadhouse relative to his disability." No evidence in the record supports this determination. It is essentially undisputed that the Roadhouse was not new construction and had not undergone any alterations that would trigger compliance with section 19955.

Like all public accommodations, the Roadhouse has an ongoing obligation under the ADA to remove readily achievable barriers to access. The record confirms that the Roadhouse was not ADA compliant, and it remediated access barriers from September 2014 through 2016. Plaintiff's injunctive relief claim, however, was premised on violation of section 19955, not the ADA. As discussed above, Lowbrau was under no legal obligation to

15

make accessibility improvements under section 19955 unless the Roadhouse had undergone a triggering alteration. No evidence of any such alteration was offered by plaintiff at trial, and indeed, plaintiff's trial counsel conceded that "[w]e established no alteration, no triggers in this particular case."

On appeal, plaintiff contradicts his own trial counsel's concession and argues there were noncompliant alterations at the Roadhouse observed by his expert Danz in September 2014. The contention has no merit. Plaintiff's expert Danz observed four ADA remediation projects under construction: installing a concrete parking pad and new wheelchair access ramp, modifying a bathroom to be wheelchair accessible, and raising a dining table to provide sufficient clearance. When Danz conducted a follow-up inspection in August 2016, virtually all of the access concerns he previously observed had been remediated to current state and federal standards. It defies common sense that an alteration would be deemed "noncompliant" simply because the project is still underway. In any event, accessibility requirements under the California Building Code are not triggered by an alteration made "solely for the purpose of removing barriers undertaken pursuant to [the ADA] or the accessibility requirements of [the California Building Code]." (Cal. Code Regs. tit. 24, § 11B-202.4.)

Because there was no evidence presented of any alteration at the Roadhouse that triggered compliance with section 19955's accessibility mandates, judgment entered on plaintiff's behalf has no basis in the record and must be reversed.

## III. Plaintiff Is Not Entitled to Attorney Fees Under a Catalyst Theory

Plaintiff concedes that "section 19955 neither imposes ADA requirements on California businesses, nor requires readily achievable barrier removal." He contends, however, that he was not required to prove

16

that any remedial work undertaken by Lowbrau was required by law. Plaintiff essentially argues that so long as a prelitigation demand confers a public benefit—regardless of its merit—one should be entitled to attorney fees and costs under the catalyst theory. His arguments runs counter to the fee award provision of Civil Code section 55 and the limiting principles enunciated by our Supreme Court in *Graham*.

### A. Applicable Legal Principals

The catalyst theory requires a causal connection between the plaintiff's lawsuit and the relief obtained. (*Wallace v. Consumers Cooperative of Berkeley, Inc.* (1985) 170 Cal.App.3d 836, 844.) Under this theory, "an award of attorney fees may be appropriate where 'plaintiffs' lawsuit was a *catalyst* motivating defendants to provide the primary relief sought . . . .' [Citation.] A plaintiff will be considered a 'successful party'[4] where an important right is vindicated 'by activating defendants to modify their behavior.' " (*Westside Community for Independent Living v. Obledo* (1983) 33 Cal.3d 348, 353.) Though originally derived from the private attorney general statute found at Code of Civil Procedure section 1021.5, the catalyst theory has been extended to attorney fee awards under Civil Code section 55.[5] (*Mundy v. Neal* (2010)

---

[4] The terms "prevailing party" and "successful party" are synonymous. (*Graham, supra,* 34 Cal.4th 553 at p. 570.)

[5] Civil Code section 55 is the statutory mechanism by which a person who successfully vindicates the right to disability access under state law may be awarded prevailing party attorney fees. It provides: "Any person who is aggrieved or potentially aggrieved by a violation of Section 54 or 54.1 of this code, Chapter 7 (commencing with Section 4450) of Division 5 of Title 1 of the Government Code, or Part 5.5 (commencing with Section 19955) of Division 13 of the Health and Safety Code may bring an action to enjoin the violation. The prevailing party in the action shall be entitled to recover reasonable attorney's fees."

17

186 Cal.App.4th 256, 259.)  Cases decided under Code of Civil Procedure section 1021.5 are helpful in guiding our analysis.  (*Ibid.*)

The leading case on the catalyst theory is *Graham, supra,* 34 Cal.4th 553.  In *Graham,* the plaintiffs asserted a claim for breach of express warranty against a truck manufacturer that allegedly misrepresented the truck's towing capacity.  (*Id.* at pp. 562–563.)  While the action was pending, the manufacturer offered to repurchase or replace all the trucks it had sold to the public.  (*Id.* at p. 563.)  Although the trial court dismissed the action as moot, it awarded attorney fees to the plaintiffs under Code of Civil Procedure section 1021.5, relying on the catalyst theory.  (*Graham,* at pp. 563–564.)

The *Graham* court affirmed, holding that plaintiffs may be considered the prevailing party when they achieve their litigation objectives "by means of [the] defendant's 'voluntary' change in response to the litigation," rather than by means of a final judgment.  (*Graham*, *supra*, 34 Cal.4th at pp. 571, 572.)  The court emphasized the policy reasons favoring the catalyst theory, which included encouraging public interest litigation and ensuring that attorneys who successfully bring lawsuits protecting the public interest are properly compensated.  (*Id.* at p. 574.)  The court recognized, however, the potential for abuse because allowing recovery under the catalyst theory could "encourage nuisance suits by unscrupulous attorneys hoping to obtain fees without having the merits of their suit adjudicated."  (*Ibid.*)  To guard against such abuse, the court held that a plaintiff must show (1) that there was a causal connection between the lawsuit and the relief obtained; (2) that the suit had sufficient legal merit, and (3) that the plaintiff made a reasonable attempt to "to settle the matter short of litigation."  (*Id.* at p. 577; see *id.* at pp. 571–572, 575–578.)

18

The second element of the catalyst theory requires inquiry into an action's objective legal merit, not a plaintiff's subjective beliefs regarding the action. (*Graham, supra,* 34 Cal.4th at p. 575.) "The trial court must determine that the lawsuit is not 'frivolous, unreasonable or groundless.' " (*Ibid.,* quoting *Stivers v. Pierce* (9th Cir. 1995) 71 F.3d 732, 752, fn. 9 (*Stivers*); see *Graham*, at p. 576 ["Attorney fees should not be awarded for a lawsuit that lacks merit, even if its pleadings would survive a demurrer."].) This determination "is not unlike the determination [the court] makes when asked to issue a preliminary injunction, i.e., not a final decision on the merits but a determination at a minimum that ' "the questions of law or fact are grave and difficult." ' " (*Graham,* at pp. 575–576, quoting *Wilms v. Hand* (1951) 101 Cal.App.2d 811, 815.)

### B. Analysis

As an initial matter, we are not convinced that the catalyst theory should even apply here. The catalyst theory is generally not invoked in cases where the merits have been fully litigated to a final judgment. "The catalyst theory provides that a plaintiff is successful for purposes of an attorney fee award . . . *despite* the lack of a favorable judgment or other court action, if the lawsuit was a catalyst in motivating the defendant to provide the primary relief sought." (*Garcia v. Bellflower Unified School Dist. Governing Bd.* (2013) 220 Cal.App.4th 1058, 1066, italics added; *Lyons v. Chinese Hospital Assn.* (2006) 136 Cal.App.4th 1331, 1346 [issue in catalyst cases " 'is whether a party who has not obtained *any* judicial relief is nevertheless entitled to fees' "].)

Unlike the mooted claim at issue in *Graham,* the merits of plaintiff's claims were fully adjudicated after a 12-day bench trial in which the trial court heard witness testimony and considered voluminous exhibits about the

19

architectural conditions of the Roadhouse. The instant appeal presents a very different situation than the catalyst case envisioned in *Graham* whereby trial courts must "conduct an abbreviated but meaningful review of the merits of the litigation designed to screen out nuisance suits without significantly increasing attorney fee litigation costs." (*Graham, supra,* 34 Cal.4th at p. 576.) No such judicial efficiency was achieved here as plaintiff's section 19955 claim was thoroughly litigated to a final judgment.[6]

Even if the catalyst doctrine had been properly invoked, plaintiff cannot be deemed the prevailing party because the evidence does not support any entitlement to relief under section 19955. The catalyst theory requires that a plaintiff identify " ' "the precise factual/legal condition that [he or she] sought to change or affect." ' " (*Graham, supra,* 34 Cal.4th at p. 576; see *Tipton-Whittingham v. City of Los Angeles* (2004) 34 Cal.4th 604, 608 [catalyst theory requires that "the lawsuit had merit and achieved its catalytic effect by threat of victory, not by dint of nuisance and threat of expense"].) As discussed above, plaintiff's section 19955 injunctive relief claim is "groundless"—that is, there is no legal merit to his claim because plaintiff failed to present any evidence that the Roadhouse required accessibility modifications under the California Building Code.

Plaintiff emphasizes the first prong of the catalyst theory, contending that the trial court found a causal connection between his litigation demands and the remediation Lowbrau embarked upon as a result of his advocacy.

---

[6] Complicating matters further, the trial court did not order any injunctive relief after plaintiff's trial counsel acknowledged that "all barriers to access at the Roadhouse" had been remediated and plaintiff would no longer seek an injunction. Plaintiff candidly admits on appeal that he "tried both of his causes of action so that, among other things, he could prove entitlement to prevailing party attorneys' fees."

20

Citing *Hogar Dulce Hogar v. Community Development Comm. of City of Escondido* (2007) 157 Cal.App.4th 1358, he argues " ' "[t]he appropriate benchmarks in determining which party prevailed [under a catalyst theory] are (a) the situation immediately prior to the commencement of suit, and (b) the situation today, and the role, if any, played by the litigation in effecting any changes between the two." ' " (*Id.* at p. 1366.) True, the causal connection is an important consideration, but not to the exclusion of the legal merits of a claim. In *Graham*, the trial court had already concluded that the plaintiffs' lawsuit was a substantial causal factor in DaimlerChrysler's change in policy. The Supreme Court nevertheless remanded for the trial court to consider the merits of the plaintiffs' claims before it could award attorney fees under the catalyst theory. (*Graham*, *supra*, 34 Cal.App.4th at p. 577.) So too here, the catalyst theory cannot be collapsed into a single inquiry about the causal relationship between litigation demand and outcome.

Plaintiff also relies on *Stivers,* a Ninth Circuit catalyst case in which the court rejected the argument that a plaintiff may not be considered the prevailing party unless the relief obtained was required by law. (*Stivers, supra,* 71 F.3d at 752, fn. 9.) In *Stivers,* the plaintiffs sought injunctive relief and damages after an administrative board denied their applications for licenses as private investigators. (*Id.* at pp. 739-740.) The plaintiffs dismissed their injunctive relief claims after the board agreed to reconsider their applications and granted them. (*Ibid.*) After the trial court granted summary judgment for the board on damages, plaintiffs requested a fee award as the prevailing parties on their injunctive relief claims, relying on the catalyst theory. (*Ibid.*) The trial court denied their request. (*Id.* at pp. 752–753.)

21

The Ninth Circuit reversed, stating: "A plaintiff who obtains a favorable settlement is *not* required to demonstrate that he would have prevailed on the merits in order to be considered a prevailing party. . . . [¶] Here, the plaintiffs have raised substantial legal and factual questions. Their claims are by no means frivolous, unreasonable, or groundless. Accordingly, there is no doubt that the plaintiffs have satisfied the [second] prong." (*Stivers, supra,* 71 F.3d at p. 752.)

*Stivers* is inapposite. Plaintiff here did not obtain a favorable pretrial settlement. Instead, the trial court based its fee award on plaintiff's success in obtaining a judgment on his section 19955 claim—a judgment that we have concluded is unsupported by the evidence. Thus, "the factual predicate for the trial court's award . . . is no longer valid." (*Estrada v. FedEx Ground Package System, Inc.* (2007) 154 Cal.App.4th 1, 17.) It is well settled that " '[p]rocedural success during the course of litigation is insufficient to justify attorneys' fees where the ruling is later vacated.' " (*Kimble v. Board of Education* (1987) 192 Cal.App.3d 1423, 1431.)

Plaintiff's argument is also foreclosed under the plain language of Civil Code section 55. That statute provides in relevant part: "Any person who is aggrieved or potentially aggrieved *by a violation of* . . . Part 5.5 (commencing with Section 19955) of Division 13 of the Health and Safety Code may bring an action to enjoin the violation. The prevailing party in the action shall be entitled to recover reasonable attorney's fees." (Italics added.) It is expressly contemplated by this provision that recovery of prevailing party attorney fees must be based on a "violation" or potential violation of section 19955 or one of the other state disability access laws.

In sum, the trial court erred in awarding plaintiff his attorney fees under Civil Code section 55. Plaintiff cannot be deemed the prevailing party

22

because no evidence was adduced at trial establishing a violation or potential violation of section 19955. Nor can plaintiff be awarded his attorney fees under a catalyst theory because the claim on which it is based was objectively without legal merit. While Lowbrau accomplished all the remediation plaintiff sought in his prelitigation demands, plaintiff concedes that none of that remediation was required by section 19955. The fee award must therefore be reversed.

## IV. Plaintiff Is Not Entitled to Attorney Fees Under the Unruh Act

Plaintiff asserts that even if an attorney fee award under his section 19955 claim was unfounded, we may affirm the judgment on the basis of his Unruh Act claim. He contends that he sought and *obtained* injunctive relief under both section 19955 and Unruh Act claims. Plaintiff misstates what occurred in the proceedings below.

As discussed above, the trial court entered judgment *against* plaintiff on his Unruh Act claim. As the trial court found, the Unruh Act claim pertained to alleged access barriers encountered by plaintiff in the South Lot, a parking lot that Lowbrau did not own, control, operate, or lease on the date of the alleged violation. The court further found that plaintiff had not encountered any structural barrier within the meaning of the ADA; what he encountered, rather, was a full parking lot. To the extent plaintiff's Unruh Act claim alleged any non-parking lot-related ADA violations, the trial court found that plaintiff never physically encountered these barriers because he drove away. That plaintiff may have also pursued injunctive relief under his Unruh Act claim is irrelevant because the claim was determined to be without legal merit and no injunctive relief or damages were awarded. On the other hand, plaintiff's pursuit of injunctive relief to address access barriers at the Roadhouse was premised solely on alleged violations of section

23

19955.[7]  Plaintiff may disagree with the trial court's characterization of his claims or its entry of judgment against him on the Unruh Act claim, but having failed to appeal the underlying judgment, we may not disturb its reasoning.  Plaintiff's unsuccessful Unruh Act claim does not provide an alternative basis for affirming the judgment below.

## V.    Code of Civil Procedure Section 1032

In its statement of decision, the trial court found:  "Because Mr. Skaff made numerous prelitigation attempts to resolve his claims, and because those claims were ultimately resolved in the course of this litigation, Mr. Skaff was the catalyst motivating Lowbrau to modify its behavior.  Therefore, Mr. Skaff is the prevailing party under the catalyst theory (Code of Civ. Proc. § 1032(a)(4)).  Because Mr. Skaff achieved the primary relief sought in his complaint, he also meets the definition of prevailing party.  (*Id.*)  Therefore, Mr. Skaff is the prevailing party for purposes of Civil Code section 55 pursuant to his cause of action under Health and Safety Code sections 19955 et seq."

From this passage, plaintiff contends that even if the trial court erred in determining he was the prevailing party under a catalyst theory for purposes of Civil Code section 55, its finding that he was the prevailing party under Code of Civil Procedure section 1032 allows him to recover his attorney fees as a separate and independent basis.  We are not persuaded.

Code of Civil Procedure section 1032 provides in relevant part:  "If any party recovers other than monetary relief and in situations other than as specified, the 'prevailing party' shall be as determined by the court, and

---

[7] As noted in footnote 6, *ante*, plaintiff did not "obtain" injunctive relief on his section 19955 claim either because plaintiff's trial counsel withdrew the request before the close of trial.

under those circumstances, the court, in its discretion, may allow costs or not . . . ." (Code Civ. Proc., § 1032, subd. (a)(4).) Code of Civil Procedure section 1032 simply allows for the award of statutory costs upon the determination by the court of a prevailing party. Nothing about this provision suggests that a "prevailing party" determination may give rise to an award of *attorney fees* when such award is not authorized under another statute. In any event, because we are reversing the judgment in plaintiff's section 19955 claim, he cannot be deemed the prevailing party under either Civil Code section 55 or Code of Civil Procedure section 1032 as a matter of law.

Lowbrau briefly asserts that it is entitled to an award of attorney fees and costs as the prevailing party. We decline to address this issue in the first instance. In light of our conclusions today, plaintiff's appeal is denied as moot.

## DISPOSITION

The judgment is reversed and the trial court is directed to enter a judgment on behalf of Lowbrau for both causes of action. The trial court's order awarding attorney fees and costs to plaintiff is vacated, and the matter is remanded for further proceedings consistent with this opinion. Lowbrau is entitled to its costs on appeal.

25

_____

Sanchez, J.


WE CONCUR:


_____

Humes, P. J.


_____

Margulies, J.


*A152462, A153606  Skaff v. Rio Nido Roadhouse*

26

Trial Court:          Sonoma County Superior Court


Trial Judge:          Hon. Allan Hardcastle


Counsel:


    Metz & Harrison, Jeff A. Harrison, Sara Pezeshkpour, for Plaintiff and Appellant


    O'Brien, Watters & Davis, Joseph Baxter, Sara Baxter, for Defendant and Appellant


*A152462, A153606  Skaff v. Rio Nido Roadhouse*

27